UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
SCHINDLER ELEVATOR CORP.,          :
et al.,                            :
                                   :
                  Plaintiffs,      :
                                   :
        -against-                  :   06 Civ. 5377 (CM)(THK)
                                   :
                                   :
OTIS ELEVATOR COMPANY,             :      **MEMORANDUM OPINION**
                                   :         **AND ORDER**
                                   :
                  Defendant.       :
------------------------------------X

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

In this action, Schindler Elevator Corporation and Inventio AG (collectively, "Plaintiffs") accuse Otis Elevator Company ("Defendant") of willfully infringing U.S. Patent No. 5,689,094 ("the 094 patent"). The patent is for an elevator control system that, through the use of electronic transmitters and a recognition device in the processing unit of the elevator control, automatically (and without passenger initiation or contact) guides elevator passengers to specific elevators for transport to their destination floor, simultaneously incorporating security and access control, personalization of travel, and traffic flow optimization. (See Complaint, dated July 17, 2006, at Exhibit A.) Plaintiffs specifically cite Defendant's elevator installation at 7 World Trade Center, in New York City, as an example of an infringement of Plaintiffs' patent. (See Complaint ¶ 5.) Defendant has counterclaimed, arguing, among other things, that the 094 patent is invalid and, in any case, Defendant is not infringing. (See

Defendant's Answer, Affirmative Defenses and Counterclaims, dated
Aug. 7, 2006, at 4.)

Presently before the Court are several discovery matters
relating to Defendant's efforts to obtain the deposition testimony
and documents of Dr. Paul Friedli, a citizen and resident of
Switzerland who is also the inventor of the patent at issue in this
litigation.[1] Specifically, Defendant requests that the Court deem
Dr. Friedli a "managing agent" of Plaintiffs, and therefore compel
Plaintiffs to produce Dr. Friedli for a deposition and require that
Plaintiffs produce "Dr. Friedli's documents that are within the
possession, custody, and control of Inventio." (See Letter from
Alan Littmann, Esq., dated May 1, 2007 ("Def. 5/1 Letter"), at 4.)
In the event that the Court does not grant its request for Dr.
Friedli's documents, Defendant requests that the Court issue a
Letter of Request for International Judicial Assistance Pursuant to
the Hague Convention, seeking the production of documents from Dr.
Friedli through the appropriate Swiss authority. (See Defendant's
Motion to Issue a Letter of Request, dated Apr. 17, 2007.)[2]

---

[1] The instant proceeding was referred to this Court for
general pretrial supervision, pursuant to 28 U.S.C. §
636(b)(1)(A).

[2] In conjunction with these matters, Defendant also
requested that Plaintiffs be required to produce their consulting
agreements with Dr. Friedli. (See Letter from Andrew C. Baak,
Esq., to the Court, dated Apr. 30, 2007, at 1.)  That issue has
been resolved, as Plaintiffs, pursuant to the Court's
instructions, have produced copies of the consulting agreements
to Defendant and the Court.

Plaintiffs argue that Defendant's requests for Dr. Friedli's deposition testimony and documents should be denied because he is not a "managing agent" of Plaintiffs, and they do not have the legal ability to produce him or his documents. (See Letter from Charles Bruton, Esq., to the Court, dated Apr. 25, 2007 ("Pls. 4/25 Letter").)

The issues involving Dr. Friedli have been the subject of several conferences and numerous submissions to this Court.

## DISCUSSION

The need to authorize document discovery under the Hague Convention is dependent upon whether the Court finds that Dr. Friedli's documents must be produced by Plaintiffs, which, in turn, is dependent upon the Court's determination as to whether Dr. Friedli is a "managing agent" of Plaintiffs, and therefore subject to deposition under Rule 30 of the Federal Rules of Civil Procedure ("Rule 30"). Thus, the Court begins by assessing whether Plaintiffs should be compelled to produce Dr. Friedli as a party-witness.

I.   Deposition of Dr. Friedli

    A.   Governing Legal Standards

Under Rule 30(b)(1) of the Federal Rules of Civil Procedure, a specific officer, director, or managing agent of a corporate party may be compelled to give testimony pursuant to a notice of deposition. A corporate employee or agent who does not qualify as

3

an officer, director, or managing agent is not subject to
deposition by notice. See, e.g., United States v. Afram Lines
(USA), Ltd., 159 F.R.D. 408, 413 (S.D.N.Y. 1994); Sugarhill Records
Ltd. v. Motown Record Corp., 105 F.R.D. 166, 169 (S.D.N.Y. 1985);
DeNoto v. Pennsylvania R.R. Co., 16 F.R.D. 567, 567 (S.D.N.Y.
1954). Such an employee is treated as any other non-party witness,
and must be subpoenaed pursuant to Rule 45 of the Federal Rules of
Civil Procedure; or, if the witness is overseas, the procedures of
the Hague Convention or other applicable treaty must be utilized.
See Afram Lines, 159 F.R.D. at 413; see also In re Honda Am. Motor
Co., 168 F.R.D. 535, 540 (D. Md. 1996) (citing Afram Lines).

    "The test for a managing agent is not formulaic." Boss Mfg.
Co. v. Hugo Boss AG, No. 97 Civ. 8495 (SHS)(MHD), 1999 WL 20828, at
*3 (S.D.N.Y. Jan. 13, 1999). Rather, the question of whether a
person is a managing agent, and therefore subject to a notice of
deposition, is answered pragmatically and on a fact-specific basis.
See 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus,
Federal Practice and Procedure § 2103, at 39 (2d ed. 2007); see
also Afram Lines, 159 F.R.D. at 413 ("Because of the vast variety
of factual circumstances to which the concept must be applied, the
standard . . . remains a functional one to be determined largely on
a case-by-case basis.") (quoting Founding Church of Scientology of
Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1452 (D.C. Cir.
1986) (citation omitted)). "The term 'managing agent' should not

4

be given too literal an interpretation," <u>Tomingas v. Douglas Aircraft Co.</u>, 45 F.R.D. 94, 96 (S.D.N.Y. 1968), and "[a]s in all matters appertaining to discovery, it is the ends of justice that are to be served." <u>Church of Scientology</u>, 802 F.2d at 1453.

With these principles in mind, courts in this district have generally considered five factors in determining whether an individual is a managing agent:

> 1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demands of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination; 4) the general responsibilities of the individual respecting the matters involved in the litigation; and 5) whether the individual can be expected to identify with the interests of the corporation.

<u>Sugarhill Records</u>, 105 F.R.D. at 170 (internal quotations and citations omitted); <u>accord</u> <u>Afram Lines</u>, 159 F.R.D. at 413; <u>Zurich Ins. Co. v. Essex Crane Rental Corp.</u>, No. 90 Civ. 2263 (SWK) (JCF), 1991 WL 12133, at *1 (S.D.N.Y. Jan. 29, 1991); <u>see also</u> <u>Boss Mfg.</u>, 1999 WL 20828, at *3 (recognizing that although the number of factors generally considered by courts ranges from three to five, courts in this district have considered the five factors listed above).

Just as it is clear that a deponent need not have a formal association with the corporation, and need not be associated with

the corporation at the time of his deposition, to be deemed its managing agent, see Dubai Islamic Bank v. Citibank, N.A., No. 99 Civ. 1930 (RMB)(THK), 2002 WL 1159699, at *3 (S.D.N.Y. May 31, 2002) (internal citations omitted), those characterized as independent contractors can also be managing agents for purposes of Rule 30. See Afram Lines, 159 F.R.D. at 413 (stating that the five-step analysis is "fully applicable to cases like this where the agent is a corporate entity rather than an individual and an independent contractor rather than an employee"); see also Calgene, Inc. v. Enzo Biochem, Inc., No. Civ. S93-0195, 1993 WL 645999, at *8 (E. D. Cal. Aug. 23, 1993)(holding that consultant and advisory board member who identified with interests of company and who had "power regarding the subject matter of the litigation" was managing agent). Indeed, in the independent contractor scenario, "the existence of an agency relationship . . . is clear," and "the focus of the [managing agent] analysis is accordingly on the scope of the agent's authority, and the nature of his role in the matters at stake in the litigation." United States v. Fid. & Guar. Co. v. Braspetro Oil Services Co., No. 97 Civ. 6124 (JGK)(THK), 2001 WL 43607, at *3 (S.D.N.Y. Jan. 17, 2001).

Finally, although the examining party bears the burden of establishing the status of the witness, see Sugarhill Records, 105 F.R.D. at 170, the exact nature of this burden is not perfectly clear, see Boss Mfg., 1999 WL 20828, at *4 ("[I]t is not entirely

clear whether the burden [of establishing the deponent's status] is one of production or persuasion or both."); Afram Lines, 159 F.R.D. at 414 (suggesting that the burden may vary depending on whether the examining party has had complete discovery on the issue or whether the deponent is an employee of the opposing party); accord Malletier v. Dooney & Bourke, Inc., No. 04 Civ. 5316, 2006 WL 3476735, at *14 (S.D.N.Y. Nov. 30, 2006).  In any event, the burden is "modest," Boss Mfg., 1999 WL 20828, at *4, and all doubts are to be resolved in favor of the examining party, see Malletier, 2006 WL 3476735, at *14; Afram Lines, 159 F.R.D. at 414; Sugarhill Records, 105 F.R.D. at 171.  Thus, the examining party satisfies its burden when it produces "enough evidence to show that there is at least a close question whether the proposed deponent is the managing agent." Afram Lines, 159 F.R.D. at 413; accord Boss Mfg., 1999 WL 20828, at *4.  This approach permits discovery to proceed, while deferring until trial the ultimate question of whether the witness's testimony is binding on the corporation. See Malletier, 2006 WL 3476735, at *14; Afram Lines, 159 F.R.D. at 413-14; Zurich Ins. Co., 1991 WL 12133, at *2; Sugarhill Records, 105 F.R.D. at 171; see also Federal Practice and Procedure § 2103 ("The determination of whether a particular person is a 'managing agent' will be made by the trial court when the deposition is sought to be introduced. . . .").  The witness's deposition testimony itself may well provide the best evidence of his or her status. See Afram

7

Lines, 159 F.R.D. at 413-14 (stating that it is proper to defer final determination of managing agent status until trial since at that time the examining party will have had full discovery regarding that status); Boss Mfg., 1999 WL 20828, at *4 ("[A] determination that the witness is a managing agent may be made provisionally . . . while awaiting the deposition testimony before determining whether the witness is an agent for purposes of binding the corporation."); Hughes Bros., Inc. v. Callanan Rd. Improvement Co., 41 F.R.D. 450, 454 (S.D.N.Y. 1967) (noting that a showing of managing agent status for the purpose of compelling a deposition "might well be overcome by the testimonial evidence produced at th[at] very examination").

 B. <u>Analysis</u>

 The Court now considers each of the five factors outlined in <u>Sugarhill</u>, in determining whether Dr. Friedli qualifies as a "managing agent."

  1. <u>Whether Dr. Friedli is invested with general powers allowing him to exercise judgment and discretion in corporate matters</u>

 With regard to Dr. Friedli's general powers in corporate matters, Defendant has presented evidence indicating that Dr. Friedli was the inventor of Schindler ID — the patented product at issue in this litigation — and, presumably as a result of his role in the product's development, was considered within Plaintiffs' organization to be the "main Schindler ID guy in the world." (<u>See</u>

Exhibits 3 & 6 to Letter from Alan Littmann, Esq., to the Court, dated Apr. 20, 2007 ("Def. 4/20 Letter").)

Plaintiffs suggest that Dr. Friedli's responsibilities were limited to the specific development project to which he was tasked, and that he did not have general powers with regard to corporate matters. In support, Defendants cite the deposition testimony of Hans Bloechle, a corporate designee of Inventio under Rule 30(b)(6), where Mr. Bloechle stated that Dr. Friedli does not have a say in what projects he works on for Inventio. Instead, "[Dr. Friedli] gets orders to develop specific products or properties of products and then he delivers this work to Inventio." (Deposition Testimony of Hans Bloechle ("Bloechle Dep."), at 50:20-22, attached to Pls. 4/25 Letter.) Plaintiffs state plainly that [Dr. Friedli] "does not have authority to make any decisions on behalf of Plaintiffs or to bind Plaintiffs in any way." (Pls. 4/25 Letter, at 2.)

However, while Plaintiffs attempt to characterize Dr. Friedli as a mere "independent contractor who works . . . under the direction of Inventio . . . [and] is paid on an hourly basis for this work," (id.), it is clear that he played a more significant role than Plaintiffs are willing to concede. Inventio's technical documents refer to Dr. Friedli as a "Project Manager," and indeed it appears that his signature was required prior to the issuance of both the technical and sales releases relating to Schindler ID.

(<u>See</u> Sales Release of Schindler ID, dated Apr. 23, 2004, Exhibit ("Ex.") 7 to Def. 4/20 Letter, at 14; Technical System Release, dated Apr. 10, 2002, Ex. 10 to Def. 4/20 Letter, at 11.)  Moreover, Mr. Bloechle admitted in his deposition that Dr. Friedli plays some role in Schindler's sales and marketing activities, which is further supported by an internal email in which a Schindler employee states that, in a recent sale of Schindler ID to a customer, "the personal presentation by Mr. Friedli is what helped us keep Otis out of our building." (Email String, dated Dec. 15, 2005, Ex. 8 to Def. 4/20 Letter.)  In addition, while Plaintiffs' 1991 consultancy agreement with Dr. Friedli has a provision prohibiting Dr. Friedli, without appropriate written authority, from "obligat[ing] Inventio or other Schindler companies to third parties," the 2002 consultancy agreement between Dr. Friedli and Plaintiffs contains no comparable provision.  Thus, there is ample evidence that Dr. Friedli not only had significant responsibility within a given project, but that he was also portrayed, and understood outside of Plaintiffs' organization, as an individual with a high level of authority and expertise.

   2.   <u>Whether Dr. Friedli can be relied upon to give testimony, at Plaintiffs' request, in response to the demands of Defendant</u>

Neither the 1991 nor 2002 consultancy agreements between Plaintiffs and Dr. Friedli includes a cooperation clause, and Plaintiffs have represented to the Court in recent discussions that

Dr. Friedli has declined to appear for a deposition simply in response to a request Plaintiffs made at the Court's direction. However, other evidence suggests that Dr. Friedli would appear for a deposition if Plaintiffs were required to produce him.  First, Plaintiffs' counsel has stated during a telephone conference with the court that Dr. Friedli, if pressed, would appear for a deposition:

> "I'm sure if we called up and sent someone to Switzerland and talked to him about it and explain it to him, he will do it." (Hearing, held Mar. 20, 2007, at 7:19-21, attached as Ex. 14 to Def. 5/1 Letter.)

> "We asked him at one point, would you be willing to, if pressed, to give a deposition, would you be willing to do it in Germany or Belgium or London, someplace that doesn't have such restrictive laws on depositions, and he said, I will consider it.  The answer is, he would give a deposition in London." (Id., at 8:20-25.)

Thus, while he may state now that he would no longer appear, his willingness should be distinguished from the question of whether he would, if Plaintiffs were required to produce him, appear for a deposition.  On that question, in addition to prior representations by counsel, various aspects of Dr. Friedli's long-standing and ongoing relationship with Plaintiffs suggest that he would appear.  Dr. Friedli has played an instrumental role in Plaintiffs' business since at least 1991, and he continues to serve as a consultant to Plaintiffs.  Although his primary responsibilities are technical in nature, as discussed, when needed to facilitate an important sale for Plaintiffs, he helped out by

11

making a personal presentation.  Moreover, Dr. Friedli maintains a Schindler email account, (see Deposition of Sula Moudakis, Mar. 27, 2007 ("Moudakis Dep."), at 27:3-9, Ex. 4 to Def. 4/20 Letter), and has access to Plaintiffs' confidential documents, (see Moudakis Dep., at 171:21-25, Ex. 4 to Def. 4/20 Letter; Bloechle Dep., at 22:9-11, Ex. 2 to Def. 4/20 Letter), both reflecting the close relationship between Plaintiffs and Dr. Friedli. See Afram Lines, 159 F.R.D. at 414 (considering, as factors in assessing management agent status, individual's "continuing ability to utilize the party's organs of communication," and "access to the party's confidential documents") (internal citations omitted).  In addition, Plaintiffs' Rule 26 Disclosures list Dr. Friedli's address as "c/o Inventio AG," and Defendant states that "Dr. Friedli is listed throughout Inventio's interrogatory responses." (See Def. 5/1 Letter, at 2-3; Rule 26 Disclosures, Ex. 15 to Def. 5/1 Letter, at 1.)  As noted in Afram Lines, "an agent's history of cooperating with a party in discovery may be probative of the party's ability to rely on the agent to testify." Id. at 415.

> 3.   Whether any person is employed by Plaintiffs in a position of higher authority than Dr. Friedli in the area on which information is sought

Defendant presents evidence showing that Dr. Friedli was regarded both inside and outside of Plaintiffs' organization as an — if not the — authority on Schindler ID.  Internally, one of Plaintiffs' employees, Edward Nowel, a 30(b)(6) witness on the

design and operation of Schindler ID, testified repeatedly that he would ask Dr. Friedli and his team if he wanted to know how Schindler ID worked. (See Deposition of Edward Nowel, Mar. 21, 2007, at 82-86, 90-91, 114-115, Ex. 11 to Def. 4/20 Letter.) Another employee stated, in presenting a customer's question to Dr. Friedli, that she was asking him directly because she "told [the customer] that [she] would go to the top for his answer." (Email from Nicole Saloio, Mar. 8, 2006, Ex. 9 to Def. 4/20 Letter.) In another case, one of Plaintiffs' employees referred to Dr. Friedli as "the top Schindler ID guy in the world." (Email from Joseph Bera, June 28, 2005, Ex. 3 to Def. 4/20 Letter.)

Plaintiffs respond that while Defendant may have provided evidence that Dr. Friedli has extensive *knowledge* regarding the subject matter of this litigation, "the test for managing agent does not turn on one's mere possession of relevant information. Rather, the witness must possess authority to *speak and act on behalf of the corporation*." Dubai Islamic Bank, 2002 WL 1159699, at *8 (emphasis added). To that end, Dr. Friedli is merely an independent contractor, and there are "individuals employed by Inventio . . . with higher authority than Dr. Friedli," such as Plaintiffs' corporate research and development staff, who dictate to Dr. Friedli what products he should develop. (See Pl. 4/25

Letter, at 3; Bloechle Dep., at 50:18-25.)[3]

Even accepting Plaintiffs' point about knowledge (versus authority), Defendant's evidence does not merely show that Dr. Friedli possessed significant knowledge about the patent embodied in Schindler ID.  Rather, Defendants have also presented evidence indicating that Dr. Friedli was the project manager who led the development of Schindler ID, and that his signature, or sign-off, was required before issuing the technical and sales releases on Schindler ID.  That is, Dr. Friedli was in charge with regard to the matters central to this case, even if there may have been

---

[3] Plaintiffs have also provided the Court with an opinion letter from Dr. Christian Hilti, a Swiss attorney, who was hired by Plaintiffs to provide an interpretation of the 1991 and 2002 consultancy agreements, which are governed by Swiss law. (See Letter from Charles Bruton, Esq., to the Court, dated May 16, 2007, at 2.)  In response to questions posed to him by Plaintiffs, Dr. Hilti states that "Dr. Friedli clearly did and does not have any authority under the two contracts to make any corporate decisions on behalf of Inventio or any other Schindler company," and later states that the two consultancy agreement "can only be classified as an 'ordinary mandate' in the sense of articles 394 to 406 of the [Swiss Code of Obligations]." (Id. at 3.)  Dr. Hilti concludes that "no Swiss judge would ever grant a . . . claim against a mandated research and development agent [like Dr. Friedli] to force him on the basis of either of the two contracts considered under Swiss law to testify before a court, be it in Switzerland or abroad." (Id. at 5.)  The Court places little weight on Dr. Hilti's interpretation where, as here, the law is clear that independent contractors may qualify as "managing agents" subject to Rule 30 depositions.  Dr. Hilti merely confirms what both the Court and Defendants acknowledge — that Dr. Friedli is not an employee of Plaintiffs.  Dr. Hilti's analysis of the consultancy agreements, in isolation, is of little use to the Court in determining whether the specific factual circumstances of this case suggest that Dr. Friedli should be treated as a managing agent of Plaintiffs.

higher authorities in Plaintiffs' organization, more generally. <u>See</u> <u>Boston Diagnostics Dev. Corp., Inc. v. Kollsman Mfg. Co.</u>, 123 F.R.D. 415, 417 (D. Mass. 1988) (in finding that this third factor supported a finding of managing agent status, the court stated that the individual "appears to have been 'in charge of the *particular* matter' (emphasis supplied) even though he was responsible to higher authority to some extent"). In any event, as discussed with regard to the first <u>Sugarhill</u> factor, Dr. Friedli does appear to have had some authority to speak on behalf of Plaintiffs. Mr. Bloechle acknowledged that Dr. Friedli was occasionally involved in sales and marketing, and another employee of Plaintiffs testified that, on at least one occasion, Dr. Friedli made a presentation to a customer that proved to be essential in completing the sale. <u>See</u> <u>supra</u>, Part I.B.1. In addition, Plaintiffs identified Dr. Friedli as one of three individuals most knowledgeable about, among other things, pricing, marketing and sales with regard to Defendant's allegedly infringing elevator installation at 7 World Trade Center. (<u>See</u> Interrogatory Responses, dated Oct. 10, 2006 ("Interr. Resp."), No. 4.)

       4.  <u>The general responsibilities of Dr. Friedli</u>
          <u>respecting the matters involved in the litigation</u>

The evidence discussed with regard to previous factors is equally relevant here. Again, lying at the center of this case are issues involving the 094 patent, embodied in the Schindler ID product, and both patent and product were developed under the

15

leadership of Dr. Friedli.  In addition to the previously discussed evidence, Dr. Friedli is obligated under his consultancy agreement to assist Plaintiffs in obtaining patent protection for the products he developed. (See 2002 Consultancy Agreement, dated Apr. 5, 2002, ¶ 12 ("The obligation with respect to assignment [of intellectual property rights] also includes assistance with the assignment by co-operation with possible Register entries, technical support, provision of documents, etc.").)

Furthermore, in its own interrogatory responses, Plaintiffs list Dr. Friedli as one of three individuals "most knowledgeable about the factual basis for the allegations in the Complaint," and list him as a person who has "knowledge or information regarding the Otis elevator installations accused of infringement," and "knowledge concerning research and development, testing, use or sale of the '094 patent or embodiments." (Interr. Resp., Nos. 1-3.) In addition, while Plaintiffs specifically allege in their Complaint that Defendant's elevator installation at 7 World Trade Center infringes the 094 patent, in their interrogatory responses Plaintiffs list Dr. Friedli as one of the three people "most knowledgeable about any proposal, bid, specification, pricing information, marketing and sales documents, design drawings, or communications (oral or written) that Schindler had with anyone regarding the elevator installation at 7 World Trade Center . . . ." (Id., No. 4.)

16

Finally, in a similar case in California, the court considered whether a proposed witness who was a "consultant and member of the advisory board," but not an employee, was a managing agent. See Calgene, 1993 WL 645999, at *8.   In finding that the proposed witness was a managing agent, the court considered circumstances similar to those presented here: "Assuming for a moment the relevancy of the patent to issues in this litigation, as the inventor of [the company's] patent, [the proposed witness] would be very helpful in discovery of the validity of [the] patent . . . . In other words, he has power regarding the subject matter of the instant litigation." Id.

     5.   Whether Dr. Friedli can be expected to identify with the interests of Plaintiffs

Dr. Friedli has operated under a consultancy agreement with Plaintiffs since 1991, and communicates with Plaintiffs' employees regularly, through use of a Schindler email account, regarding both technical and marketing matters.   Dr. Friedli is identified throughout Plaintiffs' interrogatory responses and Rule 26 Disclosures, which list Dr. Friedli's address as "c/o Inventio AG." More generally, it is apparent from the evidence that Dr. Friedli has significant responsibilities and stature within Plaintiffs' organization.   In response, there is no evidence to suggest that Dr. Friedli's interests would be adverse to those of the Plaintiffs. See Church of Scientology, 802 F.2d at 1456 ("Courts have accorded managing agent status to individuals who . . .

17

retained some role in the corporation or at least maintained interests consonant with rather than adverse to its interests.").

*          *          *

The evidence of Dr. Friedli's long, intimate relationship and shared interests with Plaintiffs is more than sufficient to preliminarily conclude that Dr. Friedli is a managing agent of Plaintiffs. Accordingly, Plaintiffs shall produce Dr. Friedli as a managing agent witness at this time, with the understanding that a final determination as to whether his testimony is binding on the corporation shall be deferred while discovery proceeds. See Dubai Islamic Bank, 2002 WL 1159699, at *4 ("[T]he examining party satisfies its burden when it produces enough evidence to show that there is at least a close question whether the proposed deponent is the managing agent." (citing Afram Lines, 159 F.R.D. at 413 (internal quotations and additional citations omitted)). Dr. Friedli's deposition testimony itself "may well provide the best evidence of his . . . status." Id. at 413-14; (stating that it is proper to defer final determination of managing agent status until trial since at that time the examining party will have had full discovery regarding that status); see also Boss Mfg., 1999 WL 20828, at *4 ("[A] determination that the witness is a managing agent may be made provisionally . . . while awaiting the deposition testimony before determining whether the witness is an agent for purposes of binding the corporation."); Hughes Bros., Inc. v.

Callanan Rd. Improvement Co., 41 F.R.D. 450, 454 (S.D.N.Y. 1967) (noting that a showing of managing agent status for the purposes of compelling a deposition "might well be overcome by the testimonial evidence produced at th[at] very examination").

With regard to the location of the deposition, as a general rule, a plaintiff who brings suit in a particular forum may not avoid appearing for examination in that forum. See, e.g., A.I.A. Holdings, S.A. v. Lehman Bros., Inc., 97 Civ. 4978 (LMM)(ABP), 2002 WL 1041356, at *1 (S.D.N.Y. May 23, 2002) ("[I]t is well settled that a plaintiff is ordinarily required to make him or herself available for a deposition in the jurisdiction in which the action is brought."); Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway and Sons, 54 F.R.D. 280, 281 (S.D.N.Y. 1971) ("Since plaintiff has chosen this forum, it cannot impose upon defendant the extraordinary expense and burden of traveling to a foreign country to conduct deposition except on a showing of burden and hardship to the plaintiff."); Michael C. Silberberg, Civil Practice in the Southern District of New York § 17.11 (2d ed. 2000) ("[T]he deposition of a plaintiff usually may be taken in the Southern District of New York notwithstanding the plaintiff's residence outside the district [because] the plaintiff selected the Southern District as the forum for trial.") (collecting cases). In the end, however, the decision as to the location of the deposition lies within the discretion of the Court. See Sugarhill Records, 105

F.R.D. at 171; <u>Federal Practice and Procedure</u> § 2112.   Here, Plaintiffs have previously represented to the Court that Dr. Friedli may be willing to appear for a deposition in Europe, specifically London, and Defendant has stated that it would be willing to travel to a location convenient to Dr. Friedli, such as London, for purposes of the deposition.   The parties should therefore confer and agree on an acceptable location.

II.   <u>Dr. Friedli's Documents</u>

In conjunction with its argument that Dr. Friedli is subject to deposition under Rule 30(b)(6), Defendant also seeks "Dr. Friedli's documents that are within the possession, custody and control of Inventio."   Plaintiffs respond that the issue is moot, as "all responsive documents have been searched for in Switzerland and the United States, and 100,000 documents have been found and produced to Otis's counsel." (Letter from Charles Bruton, Esq., to Court, dated May 4, 2007, at 4.)

It is unclear to the Court what documents Defendant contends it is still owed, and it is equally unclear on what basis Defendant has determined that such documents have not been produced.   While Defendant argues that the consultancy agreement between Dr. Friedli and Plaintiffs requires that Dr. Friedli turn over all documents in his custody to Plaintiffs, (<u>see</u> Letter from Alan Littmann, Esq., to the Court, dated May 22, 2007, at 1), Plaintiffs state that they have produced all responsive documents in their possession. (<u>See</u>

20

Letter from Charles Bruton, Esq., to the Court, dated May 16, 2007, at 1.)  In light of the Court's decision regarding Dr. Friedli's deposition, we assume that Plaintiffs will confer with Dr. Friedli to assure that he is not in possession of any relevant documents that Plaintiffs have yet to produce.

The Court will reserve further judgment on this issue until after Dr. Friedli is deposed.  This will provide the parties with an opportunity to obtain further information relevant to determining, first, whether Dr. Friedli is actually a managing agent of Plaintiffs, and, second, whether he is in possession of relevant documents that Plaintiffs have failed to turn over.  If, after the deposition of Dr. Friedli, Defendant believes it is necessary to renew its request, the Court will consider it at that time.

III. <u>International Judicial Assistance</u>

Taking into account the preliminary nature of the Court's ruling, it remains uncertain whether document discovery under the Hague Convention is needed.  Nevertheless, the process of obtaining discovery pursuant to the Hague Convention can be a time-consuming process, and Plaintiffs, with the exception of several minor wording changes, have not objected to Defendant's Letter of Request for International Judicial Assistance under the Hague Convention. (<u>See</u> Plaintiffs' Response to Defendant's Motion to Issue a Letter of Request, dated Apr. 23, 2007, at 1.)  Thus, the Court will issue

21

the letter of request.

By June 22, 2007, Defendant shall make the changes detailed in Footnote 1 of its Reply Memorandum, dated April 26, 2007, and submit the revised Letter of Request to the Court in order for it to be issued.  Should it be determined at Dr. Friedli's deposition that no further documentary discovery is needed, the Request for International Judicial Assistance can be withdrawn.

## CONCLUSION

For the foregoing reasons, Plaintiffs are ordered to produce Dr. Friedli as a witness for a deposition at a date and location convenient to all parties.  Defendant's request with regard to Dr. Friedli's documents is denied at this time, without prejudice to renewing this request subsequent to the Friedli deposition.  The Court will issue the Letter or Request for International Judicial Assistance upon Defendant's prompt submission of the revised letter.

**SO ORDERED.**

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         June 15, 2007

22