UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE: 10/6/10

---------------------------------------------------------------x

SCHINDLER ELEVATOR CORP., and
INVENTIO AG,

                Plaintiffs,

        -against-                                          06 Civ. 5377 (CM)(THK)

OTIS ELEVATOR COMPANY,

                Defendant.

---------------------------------------------------------------x

### MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT; DENYING MOTIONS TO STRIKE SUPPLEMENTAL EXPERT REPORT AND SUPPLEMENTAL INTERROGATORY RESPONSE TO SECOND INTERROGATORY NO. 6; REOPENING DISCOVERY FOR NINETY DAYS TO PERMIT THE PARTIES TO SUPPLEMENT FULLY THEIR PREVIOUS DISCOVERY RESPONSES; SETTING SCHEDULE FOR SUBMISSION OF FINAL PRE-TRIAL ORDER

McMahon, J.:

        Following the Federal Circuit's reversal of this court's decision granting summary judgment to defendant, and its correction of the court's error in claim construction relating to the instant patent, defendant renewed its motion for summary judgment so that this court could consider grounds that were asserted in its original motion but were not reached by this court. The court now disposes of that renewed motion.

        The reader's familiarity with the court's claim construction decision (only one element of which was overturned) and with the Federal Circuit's decision are assumed; the court is not going to reiterate any matter covered by those decisions.

### 1. There is a Disputed Issue of Fact Over Whether the Recognition Device is Located "In the Vicinity Of" the Elevators.

        Otis first asserts that it is entitled to summary judgment because the recognition device is not located "in the vicinity of" the elevators.  I can dispose of this issue quickly. Whether a distance of 54 to 138 feet, and the interposition of a wall between the recognition device and the elevators,  qualifies as "in the vicinity of" the elevators presents a question of fact that cannot be resolved on a motion for summary judgment. To

the extent that Otis' motion relies on this argument, the motion is denied. The purported shift in the testimony of plaintiff's expert, James Fortune, is certainly fair game for cross examination at the trial.

### 2. There is a Disputed Issue of Fact Concerning Whether the Storage Device at the 7 WTC Installation is "Coupled Between the Control Device and the Recognition Device"

The more difficult argument to be considered by the Court is whether the record raises a genuine issue of fact concerning whether the security system is "coupled between" the control device and the recognition device. Unless the admissible evidence raises a genuine issue of material fact on this point, Otis is entitled to summary judgment.

Claims 1 and 14 both require a "storage device coupled between the unit [recognition device] and the control device." ('094 patent, col. 6:29-30, col. 8:8-9). The Court has defined "coupled between" to mean "connected in such a way that the storage device is linked directly to both the recognition device and the control device and can serve as a conduit through which data can pass from one to the other." The court has also stated that, "The word 'coupled' fairly implies a direct linkage." (Markman Decision at 20-21). In view of the claim construction, the storage device must connect directly to both the control device and the recognition device, rather than connecting to them through intermediary devices.

Otis takes the position that, in elevator systems using Compass with Seamless Entry, the security database that stores data on each passenger's destination floor is not "linked directly" to the elevator dispatcher (the control device). Instead, after receiving identification number data from the card reader, the security database looks up the destination floor and sends that information to the Destination Entry Computer, or DEC, which is located in the turnstile. It is the DEC, not the security database, that communicates with the elevator dispatcher—the alleged "control device"—to obtain the car assignment for the passenger.

During discovery, plaintiffs, through their technical expert, Dr. Dowling, took the position that the DEC is part of the "recognition device," which means that it cannot be the "storage device" that is coupled *between* the recognition device and the control device. Specifically, in his original expert report, which was provided to the defense in April 2007, Dr. Dowling contended that the "storage area looks up the user's destination floor and sends it back to *a redirector/router portion of the recognition device.*" (Dowling Report, Levine Ex. 11 at 2), and that the "combination of the global DEC (including proximity card and reader), DES, and/or redirector/router are used in the Seven World Trade Center to implement all of the functions of the recognition device." (Id. at 5). Confirming this, Dr. Dowling testified at his deposition that, in his opinion, the DEC was "part of the recognition device." (Dowling EBT 145:5-8).

Were Dr. Dowling today adhering to his original opinion, there would be no evidence of any direct connection between the alleged storage device (the security database) and the alleged control device (the elevator dispatcher), so that the storage device serves as a conduit through which data can pass from one to the other – which is the court's construction of the term "coupled between." While the recognition device (the card reader) is linked directly to the storage device (the security database), the storage device does not pass recognition information directly on to the control device (the elevator dispatcher). Instead, it sends that data back to the recognition device (the DEC), which in turn send the data directly to the control device (the dispatcher). On this view of the record, Otis would be entitled to summary judgment of non-infringement.

However, after the court issued its claim construction (<u>Markman</u>) decision, Dr. Dowling rethought his original opinion and changed his mind about the role of the DEC. In a supplemental declaration, plaintiff's expert opines that the DEC "is not part of the recognition device, but is a part of the control device." (Dowling Supplemental Declaration at ¶ 14). Dr. Dowling freely acknowledged that he had changed his views in light of the <u>Markman</u> ruling (Id.). An affirmation containing Dr. Dowling's revised opinion was submitted to the court along with Schindler's response to Otis' original motion for summary judgment.

In order to obtain summary judgment on this renewed motion, Otis asks the court to strike Dr. Dowling's revised opinion—both his June 13, 2008 supplemental affirmation and his revised expert report, which issued on May 10, 2010, after the Federal Circuit's decision—and to preclude plaintiff from offering evidence about its alternative theory of infringement. That motion is DENIED.

The first suggestion of which I must dispose is that the court has already denied Otis' motion to strike. I have not. I never really reached it. In connection with Otis' first motion for summary judgment, I "considered" the fact that Dr. Dowling's supplemental declaration supported my conclusion that the system assembled by Otis required "personal action" by the user. Under the terms of the patent as I had construed it (using a construction that has been overturned by the Federal Circuit), any sort of "personal action" by the user to bring the card into proximity with the card reader was prohibited. To me, Dr. Dowling's explanation of the impromptu experiment he conducted at 7 WTC simply confirmed that Otis had not infringed the patent in suit. I did not reach the issue presently under discussion—whether the storage unit was "coupled between" the recognition device and the control device—so I did not have to decide, and did not decide, whether it would be appropriate to consider Dr. Dowling's radically altered opinion about the role that the DEC played in the system. I turn to that issue now.

Fed. R. Civ. P. 26(a)(2)(B) and (C) provide that a party's disclosure of his expert witness must be accompanied by a written report, that must contain "a complete statement of all opinions the witness will express and the basis and reasons for them," and must do so "at the times and in the sequence that the court orders." The judge who originally handled this case, and who set various discovery deadlines, was The Hon. Richard Conway Casey. Prior to his death in March 2007, Judge Casey directed that

plaintiff's expert report be disclosed April 13, 2007, and set a cut-off for all discovery of May 31, 2007. Dr. Dowling did not revise his opinion until a year after the discovery cut-off, so he could not possibly have disclosed it by April 13, 2007. Nonetheless, his opinion was supposed to have been disclosed by that date – and the opinion he now proffers was not.

Fed. R. Civ. P. 37(c)(1) provides that a party is not allowed to introduce into evidence new information that was required to be identified during discovery unless the failure was either substantially justified or is harmless. Otis argues that the failure to disclose Dr. Dowling's revised opinion until the summary judgment motion was briefed was neither "substantially justified" nor "harmless."

Schindler expresses the view that Dr. Dowling was "entirely justified" in revising his analysis in light of the court's construction of the claim in its Markman decision. (Opp Br. At 13). I agree.

Dr. Dowling changed his theory because, as Schindler admits, the court's claims constructions "differed significantly from the constructions Schindler proposed, and on which Dr. Dowling based his expert report." (Pl Memo in Opp. To Otis' Motion to Strike the Supplemental Expert Report of Dr. Dowling at 4-5; see also Summary Judgment Decision at page 8, n.2). Had this court been managing this case from the outset, I would have taken steps to forestall the need for such reconsideration. Under my individual rules for the management of patent cases, the claims would have been construed first, before any merits discovery was conducted, and before any expert had to issue a report. But this case was not reassigned to me until May 29, 2007 – two days before the discovery cut-off. I inherited a case in which the presiding judge had allowed merits discovery to proceed, and had directed that the experts file their reports, without first construing the claims. The experts were perforce required to devise their opinions without knowing how the court would construe the claims. As to certain aspects of the claims, Dr. Dowling guessed wrong. It would be unjust not to allow the expert to reconsider his views in light of the claim construction that was announced in the court's <u>Markman</u> decision – which is not to say that his change of heart cannot be called to his (and the jury's) attention when he testifies at trial.

Fundamentally, the situation presently confronting this court is analogous to the situation that the Federal Circuit addressed in <u>Asyst Technologies, Inc., v. Emtrak, Inc.</u>, 544 F. 3d 1310 (Fed. Cir. 2008). There, the Federal Circuit "changed the rules of the game" by modifying the district court's claim construction, and held that this "game change" allowed the defendant to amend its defenses and assert new invalidity theories following remand. The only difference is that, in this case, the "game changer" was the district court's <u>Markman</u> decision. The parties had every right to respond to that decision. It would have been irresponsible for them to do otherwise.

Otis is left to argue that the Markman decision issued on April 4, 2008, and Schindler did not disclose Dr. Dowling's revised theory until June 13, 2008, when it filed its papers in opposition to Otis' motion for summary judgment. While I agree that

Schindler should have alerted the court and Otis to the fact that Dr. Dowling was reconsidering his views in light of the <u>Markman</u> opinion – especially since everyone knew that Otis was briefing a motion for summary judgment -- I conclude that the failure to disclose until 74 days after the issuance of the <u>Markman</u> decision is not so unreasonable as to warrant a sanction. Indeed, I fail to see how the revised opinion could have been disclosed much earlier, since Dr. Dowling needed some time to digest the court's rulings and revisit the file wrapper.

Therefore, the court declines to strike either the Supplemental Declaration or the Supplemental Expert Report, both of which were prepared after the court's <u>Markman</u> decision and in response to that "game changing" event.

This ruling requires me to deny the motion for summary judgment on the "coupled between" ground, because Dr. Dowling's post-<u>Markman</u> opinion creates a genuine issue of material fact concerning infringement on this ground.

In view of this ruling, Otis' motion to strike Schindler's "untimely" Rule 56(f) affidavit is denied as moot.

### 3. Summary Judgment is Not Appropriate on Other Issues

Numerous disputed issues of fact bar entry of summary judgment on the issue of willfulness, non-contributory infringement and non-inducement of infringement.

Therefore, Otis' renewed motion for summary judgment is DENIED in its entirety.

### 4. Defendant's Motion to Strike Supplemental Answers to Otis' Second Set of Interrogatories is Denied.

Otis seeks to strike "supplemental" answers to Interrogatory No. 6 in Otis' Second Set of Interrogatories, which were served on May 20, 2010 – the night before Otis' renewed motion for summary judgment was due to be filed. The supplemental responses alleged that Otis had engaged in a second act of infringement, by contracting for the installation of an infringing elevator call system in the Goldman Sachs building at 200 West Street, New York, N.Y. The record reveals that evidence of the contract to supply Goldman Sachs with an elevator system incorporating the same RFID technology that was used at Seven World Trade Center was turned over to the plaintiffs in 2007 – while discovery was ongoing in this case.

Schindler responds that it has done nothing more than is required by Fed. R. Civ. P. 26(e). It notes that Schindler sought full discovery concerning the Goldman Sachs contract while discovery was open but that Otis replied that it was unable to give a complete response until the building was completed and the system as installed was tested – which occurred while this case was on appeal in the Federal Circuit. As soon as

the case was remanded, Schindler contacted Otis and asked for supplementation of Otis' discovery responses – a request that was refused. Schindler representatives then went to the newly-constructed building, concluded that some of the '094 patent claim limitations were present in the Goldman Sachs installation, and supplemented its interrogatory answer accordingly.

The motion to strike is DENIED. While Otis is correct that Schindler was aware of the Goldman Sachs installation before discovery closed, Schindler is equally correct that Otis failed to disclose much information about the Goldman installation at that time. As a result, Schindler lacked the ability to supplement its original response to Second Interrogatory No. 6 prior to the close of discovery – or even prior to the court's November 2008 decision granting Otis' motion for summary judgment. Once the court granted summary judgment and dismissed the complaint, Schindler could not supplement its interrogatory responses, because the case was closed (at least in this court). As soon as the Federal Circuit remanded the case, Schindler began trying to update the evidentiary record – because, as it argues (and as must be admitted), time has not stood still since May of 2007, when discovery initially closed. The supplemental interrogatory response was as timely as it could possibly have been under the circumstances of the case.

### 5. Scheduling Order

In view of the Federal Circuit's revision of the claim construction, the court reopens discovery through January 31, 2010. There will be no extension of this deadline, so the parties should propound all new interrogatories and document requests within the next twenty days.

If the discovery reveals that there are additional installations (such as Goldman Sachs) that should be included in this case for damages purposes, the parties must bring that to the court's attention no later than December 1, 2010. I grant Schindler until that date to move for leave to amend its complaint. Otis is warned that I will not look kindly on any responses to requests for production or to interrogatories that seem to me less than informative.

As the parties disagree fundamentally about the meaning of the term "control device," they are directed to submit briefs of no more than ten pages defining the term so that the court can construe it before the expiration of the additional discovery period. Those briefs are due on October 28; they should be filed simultaneously. If I need reply briefs I will let you know.

The parties are to file their Final Pre-Trial Order by March 18, 2011.

This constitutes the decision and order of the court.

The Clerk is directed to remove the motions at Docket numbers 121, 126, 132, 157, and 164 from the Court's list of active motions.

Dated: October 6, 2010

U.S.D.J.

BY ECF TO ALL COUNSEL