## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| INVENTIO AG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-CV-05377 (CM) |
| | ) | |
| OTIS ELEVATOR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT OTIS ELEVATOR COMPANY'S
## RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

## Table of Contents

Introduction ............................................................................................................. 1

Argument ................................................................................................................. 1

I.    Otis Is Entitled to Judgment as a Matter of Law on Inventio's Claims of
Infringement .................................................................................................. 2

    A.    Inventio Failed to Offer Legally Sufficient Evidence to Prove That Otis
Has Literally Infringed the '094 Patent .................................................... 2

    B.    Inventio Failed to Offer Legally Sufficient Evidence to Prove That Otis
Infringed the '094 Patent Under the Doctrine of Equivalents ................. 5

        1.    Inventio failed to offer legally sufficient evidence that Otis's
Compass with Seamless Entry has substantially the same function,
way, and result of asserted '094 patent claim elements ................... 5

        2.    Inventio cannot recapture subject matter that was surrendered
during the '094 patent prosecution ............................................ 9

        3.    Inventio's doctrine of equivalents claim would vitiate the asserted
claims of the '094 patent ............................................................ 12

        4.    Inventio's doctrine of equivalents claim improperly encompasses
the prior art ............................................................................... 12

    C.    Inventio Failed to Offer Legally Sufficient Evidence to Prove That Otis
Has Induced the Infringement of the '094 Patent .................................. 13

    D.    Inventio Failed to Prove Contributory Infringement by Otis of the '094
Patent ................................................................................................... 14

II.    Otis Is Entitled to Judgment as a Matter of Law on Obviousness ................... 15

    A.    Obviousness Is a Question of Law and the Jury's Verdict Is Advisory
Only ..................................................................................................... 15

    B.    The '094 Patent Would Have Been Obvious to a Person of Ordinary Skill
in the Art at the Time of the Invention .................................................. 15

        1.    Prior art not before the PTO may "carry more weight" ................ 17

        2.    The prior art demonstrates that the '094 patent is obvious as a
matter of law .............................................................................. 17

    C.    Inventio Offered Insufficient Evidence to Establish any Secondary Indicia
of Nonobviousness ............................................................................... 21

i

D.      The PTO's Recent Actions Provide Further Evidence that the '094 Patent
Is Invalid on Obviousness Grounds ...................................................................... 24

III.    In the Alternative, Otis Is Entitled to a New Trial ........................................................... 25

Conclusion ..................................................................................................................................... 25

## Table of Authorities

**Cases**

*Am. Calcar, Inc. v. Am. Honda Motor Co.*,
  Nos. 2009-1503, 2009-1567, 2011 U.S. App. LEXIS 13083
  (Fed. Cir. June 27, 2011) ....................................................................................... 5, 8

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
  725 F.2d 1350 (Fed. Cir. 1984) .................................................................................. 17

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
  377 U.S. 476 (1964).................................................................................................... 14

*Boston Scientific Scimed, Inc. v. Cordis Corp.*,
  554 F.3d 982 (Fed. Cir. 2009) .................................................................................... 15

*Cohesive Techs., Inc. v. Waters Corp.*,
  543 F.3d 1351 (Fed. Cir. 2008) .................................................................................. 16

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
  424 F.3d 1293 (Fed. Cir. 2005) .................................................................................... 2

*DeMarini Sports, Inc. v. Worth, Inc.*,
  239 F.3d 1314 (Fed. Cir. 2001) ............................................................................... 2, 12

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006) .................................................................................. 13

*Duro-Last, Inc. v. Custom Seal, Inc.*,
  321 F.3d 1098 (Fed. Cir. 2003) .................................................................................... 1

*EZ Dock, Inc. v. Schafer Sys., Inc.*,
  No. Civ. 98-2364 (RHK/AJB), 2003 WL 1610781 (D. Minn. Mar. 8, 2003) ............ 4

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  493 F.3d 1368 (Fed. Cir. 2007) .................................................................................... 9

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  535 U.S. 722 (2002)........................................................................................... 9, 10, 11

*Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*,
  618 F.3d 1294 (Fed. Cir. 2010) .................................................................................. 23

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  131 S. Ct. 2060 (2011).......................................................................................... 13, 14

*Graham v. John Deere Co. of Kansas City*,
   383 U.S. 1 (1966)..................................................................................... 15

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
   339 U.S. 605 (1950)...................................................................................... 6

*Hewlett-Packard Co. v. Mustek Sys., Inc.*,
   340 F.3d 1314 (Fed. Cir. 2003) ................................................................... 4

*Hutchins v. Zoll Med. Corp.*,
   492 F.3d 1377 (Fed. Cir. 2007) ................................................................... 2

*In re Swanson*,
   540 F.3d 1368 (Fed. Cir. 2008) ................................................................. 24

*Iron Grip Barbell Co. v. USA Sports, Inc.*,
   392 F.3d 1317 (Fed. Cir. 2004) ................................................................. 21

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007)............................................................................. passim

*Kustom Signals, Inc. v. Applied Concepts, Inc.*,
   264 F.3d 1326 (Fed. Cir. 2001) ................................................................. 12

*Lear Siegler, Inc. v. Sealy Mattress Co.*,
   873 F.2d 1422 (Fed. Cir. 1989) ............................................................... 7, 8

*Martin v. Barber*,
   755 F.2d 1564 (Fed. Cir. 1985) ................................................................... 5

*Microsoft Corp. v. i4i Ltd. P'ship*,
   131 S. Ct. 2238, 2251 (2011)............................................................... 17, 21

*Nat'l Presto Indus., Inc. v. West Bend Co.*,
   76 F.3d 1185 (Fed. Cir. 1996) ..................................................................... 9

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005) ........................................................................ 1

*Pennwalt Corp. v. Durand-Wayland, Inc.*,
   833 F.2d 931 (Fed. Cir. 1987) ................................................................... 12

*Perkin-Elmer Corp. v. Westinghouse Electric Corp.*,
   822 F.2d 1528 (Fed. Cir. 1987) ................................................................... 6

*Power-One, Inc. v. Artesyn Techs., Inc.*,
   599 F.3d 1343 (Fed. Cir. 2010) ................................................................. 23

iv

*Productivity Software Int'l, Inc. v. Healthcare Techs.*,
   No. 93 Civ. 6949 (RPP), 1995 U.S. Dist. LEXIS 6107 (S.D.N.Y. May 8, 1995) ................... 23

*Ricoh Co. v. Quanta Computer Inc.*,
   550 F.3d 1325 (Fed. Cir. 2008) ........................................................................... 13

*Schindler Elevator Corp. v. Otis Elevator Co.*,
   593 F.3d 1275 (Fed. Cir. 2010) ........................................................................... 11

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
   550 F.3d 1356 (Fed. Cir. 2008) ........................................................................... 16

*Texas Instruments, Inc. v. Cypress Semiconductor Corp.*,
   90 F.3d 1558 (Fed. Cir. 1996) ........................................................................... 6, 8

*Tronzo v. Biomet, Inc.*,
   156 F.3d 1154 (Fed. Cir. 1998) ........................................................................... 12

*Vita-Mix Corp. v. Basic Holding*, *Inc.*,
   581 F.3d 1317 (Fed. Cir. 2009) ........................................................................... 14

*Voda v. Cordis Corp.*,
   536 F.3d 1311 (Fed. Cir. 2008) ........................................................................... 11

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997) ........................................................................................... 6, 12

**Statutes**

35 U.S.C. § 103(a) ................................................................................................. 15

35 U.S.C. § 271(c) ................................................................................................. 14

**Rules**

Fed. R. Civ. P. 50(a) .............................................................................................. 1

Fed. R. Civ. P. 50(a)(1) ........................................................................................... 2

Fed. R. Civ. P. 50(b) ........................................................................................... 1, 25

Fed. R. Civ. P. 59 ................................................................................................ 25

**Regulations**

United States Patent and Trademark Office Examination Guidelines Update:
   Developments in the Obviousness Inquiry After *KSR v. Teleflex*,
   75 Fed. Reg. 53,643 (Sept. 1, 2010) ..................................................................... 16

## Introduction

Defendant Otis Elevator Company ("Otis") respectfully renews its Motion for Judgment as a Matter of Law on Plaintiff Inventio AG's ("Inventio") claims on (1) direct infringement, (2) infringement under the doctrine of equivalents, (3) inducement, and (4) contributory infringement.  At trial, Inventio failed to meet its evidentiary burden on all claims.  Otis, however, established by clear and convincing evidence that the patent is obvious and therefore invalid.

## Argument

Federal Rule of Civil Procedure 50(a) provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party," the court may, upon motion by the opposing party, grant judgment as a matter of law in the movant's favor.  Otis moved for judgment as a matter of law after Inventio rested its case (Dkt. 288, Trial Tr. 834:19-844:20) and again before the case went to the jury (Trial Tr. 1326:23-1328:2).  Pursuant to Fed. R. Civ. P. 50(b), Otis renews its request for judgment as a matter of law or, in the alternative, a new trial.

The Federal Circuit "defers to the law of the regional circuits on matters of procedural law that do not implicate issues of patent law." *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1106 (Fed. Cir. 2003).  "Thus for questions relating to Rule 50 motions generally, [the Federal Circuit] has applied regional circuit law." *Id.*  The Second Circuit has stated that judgment as a matter of law is appropriate "when, considering the evidence in the light most favorable to the non-moving party and drawing all reasonable evidentiary inferences in that party's favor, there was 'no legally sufficient evidentiary basis for a reasonable jury to find' in favor of the non-moving party." *Nimely v. City of New York*, 414 F.3d 381, 390 (2d Cir. 2005)

(quoting Fed. R. Civ. P. 50(a)(1)).  Under this standard, Otis is entitled to judgment as a matter of law on all issues.

## I.      Otis Is Entitled to Judgment as a Matter of Law on Inventio's Claims of Infringement

To prevail in a patent infringement suit, the patent owner must prove by a preponderance of the evidence that all elements or limitations of the claims, as construed by the court, are present in the accused device.  *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311 (Fed. Cir. 2005).

Inventio accused Otis of infringement at seven elevator installations that include Otis's Compass with Seamless Entry product: 7 World Trade Center, New York, NY; 100 Pine Street, San Francisco, CA; Goldman Sachs, New York, NY; Legg Mason, Baltimore, MD; Russia Wharf, Boston, MA; 53 State Street, Boston, MA; and St. Regis, Bal Harbour, FL.  (Dkt. 181, ¶ 10.)  Inventio, however, failed to offer a legally sufficient evidentiary basis for the jury to find that Otis has infringed U.S. Patent No. 5,689,094 (the "'094 patent") at each of these seven installations.

### A.      Inventio Failed to Offer Legally Sufficient Evidence to Prove That Otis Has Literally Infringed the '094 Patent

To prove literal infringement, Inventio needed to show that Otis practices every element of each asserted claim of the '094 patent.  *See Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1380 (Fed. Cir. 2007) ("Patent infringement requires that every element and limitation in a correctly construed claim is embodied in the accused system."); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-31 (Fed. Cir. 2001) ("Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, i.e., when the properly construed claim reads on the accused device exactly.") (citation omitted).

Each of the asserted claims of the '094 patent requires, among other things:

- An "information transmitter," which the Court construed to mean "a device that communicates with a recognition device via electromagnetic waves, after being actuated by that recognition device" (Trial Tr. 12:24-13:2);

- A storage device that is "coupled between" the recognition device and the control device.  The Court construed "coupled between" to mean "connected in such a way that the storage device is linked directly to both the recognition device and the control device and can serve as a conduit through which data can pass from one to the other" and construed "control device" to mean "one or more devices that receive a recognized elevator call and allocates an elevator to respond to that call using a predetermined algorithm" (Trial Tr. 13:23-14:1; 13:20-22); and

- A recognition device in the "access area in the vicinity of the elevators and spatially located away from elevator doors."  The Court construed "access area in the vicinity of" to mean "the portion of the floor on which the passenger enters the elevator that is located close to the elevator."  (Trial Tr. 13:7-11.)

Inventio failed to show that the installations at issue satisfy each of these, and other, claim limitations.

For example, Inventio failed to offer legally sufficient evidence from which a reasonable jury could find that the accused installations have an "information transmitter" that communicates "via electromagnetic waves."  To the contrary, the evidence showed that the proximity cards used in the Otis installations at issue do not "communicate via electromagnetic waves" as required by the Court's claim construction.  (Trial Tr. 999:18-24 (van der Weide testimony).)  Inventio's expert, Dr. Dowling, opined only that proximity cards "use" electromagnetic waves.  (Trial Tr. 675-76.)  That is insufficient as a matter of law under the Court's claim interpretation.  Electromagnetic waves must be the proximity card's *method of communication*—"via"—not merely present while the cards communicate some other way.  As Prof. van der Weide explained, while the cards emit a "parasitic" wave "like any radio frequency device," the proximity card that is used in the proximity card system "does not emit or reflect

3

waves for the purpose of communication."  (Trial Tr. 1000:4-1001:6.)  This testimony stands unrebutted.

During closing statements Inventio sought to "construe the construction" by suggesting that "via" is broad enough to mean "not solely or only by."  (Trial Tr. 1485:3-25.)  This improper argument alone warrants a new trial.  *See EZ Dock, Inc. v. Schafer Sys., Inc*., No. Civ. 98-2364 (RHK/AJB), 2003 WL 1610781, *12 (D. Minn. Mar. 8, 2003); *see also Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1321 n.3 (Fed. Cir. 2003).  More fundamentally, this argument shows that Inventio itself recognized there is no evidence the RFID cards at issue use electromagnetic waves as the means of communication as the Court's claim construction requires.

Inventio also failed to offer legally sufficient evidence from which a reasonable jury could find that any of the accused installations have a "storage device" "coupled between" the recognition device and control device.  The Court interpreted "coupled between" to mean "connected in such a way that the storage device is *linked directly* to both the recognition device and the control device…."  (Trial Tr. 13:23-14:1 (emphasis added).)  The Otis installations at issue do not meet this claim element because the alleged storage device—the security database— is not linked directly to the Compass controller.  (Trial Tr. 1024:10-1025:2.)  Inventio's attempt to overcome this problem by suggesting that the destination entry computer ("DEC") is the "control device" is unavailing for two reasons.  First, "control device" is defined by the Court's claim interpretation as "*receive*[*ing*] a recognized elevator call."  (Trial Tr. 13:20-22 (emphasis added).)  But as Dr. Dowling admits, the DECs "*send* a message to the dispatcher," a message that "includes proposed destination floor data."  (Trial Tr. 800:19-23 (emphasis added).)  And Dr. Dowling also acknowledges that it is the *dispatcher* that receives the recognized elevator

call.  (Trial Tr. 797:21-798:16.)  Second, Dr. Dowling initially agreed that the DEC was part of the recognition device and retreated from this position only after claim construction because his initial opinion "didn't match up right, correctly" to find infringement.  (Trial Tr. 793:11-795:24.)

Finally, Inventio failed to offer legally sufficient evidence from which a reasonable jury could find that the 7 WTC installation includes a "recognition device" located in the "access area in the vicinity of the elevators and spatially located away from elevator doors."  Indeed, the evidence at trial established that at 7 WTC any device that could reasonably be construed to be a "recognition device" was located as near as 54 feet and as far as 138 feet *away* from the elevator banks.  (*See, e.g.*, PX-68 at 4; *see also* Trial Tr. 873:14-874:8.)

Because of these failures of proof, Otis is entitled to judgment as a matter of law on Inventio's claim of literal infringement.  *See Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985) ("Infringement, either literal or by equivalence, is determined by comparing the accused device with the claims in suit, not with a preferred or commercial embodiment of the patentee's claimed invention.").

### B.   Inventio Failed to Offer Legally Sufficient Evidence to Prove That Otis Infringed the '094 Patent Under the Doctrine of Equivalents

#### 1.   Inventio failed to offer legally sufficient evidence that Otis's Compass with Seamless Entry has substantially the same function, way, and result of asserted '094 patent claim elements

To prove infringement under the doctrine of equivalents, Inventio needed to provide "*particularized testimony and linking argument* as to the insubstantiality of the differences between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents.  Such evidence must be presented on a limitation-by-limitation basis." *Am. Calcar, Inc. v. Am. Honda Motor Co.*, Nos. 2009-1503, 2009-1567, 2011 U.S. App. LEXIS

13083, at *40 (Fed. Cir. June 27, 2011) (quoting *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996)) (emphasis added and internal quotation marks omitted).  "What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950).

"[A] court may not, under the guise of applying the doctrine of equivalents, erase a plethora of meaningful structural and functional limitations of the claim[s] on which the public is entitled to rely in avoiding infringement." *Perkin-Elmer Corp. v. Westinghouse Electric Corp.*, 822 F.2d 1528, 1532 (Fed. Cir. 1987).  Therefore, the most typical way of demonstrating equivalents is for the patent holder to show that each specific element of the accused product "matches the function, way, and result of [a] claimed element." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997).  The Supreme Court has explained:

> Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole.  It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.

*Id.* at 29.  It is not enough to generally contend that the accused device is substantially the same as the function *or* way *or* result as the invention.  *See, e.g.*, *Perkin-Elmer Corp.*, 822 F.2d at 1531 n.6 ("That a claimed invention and an accused device may perform substantially the same function and may achieve the same result will not make the latter an infringement under the doctrine of equivalents where it performs the function and achieves the result in a substantially different way.").

The evidence of infringement under the doctrine of equivalents also "cannot merely be subsumed in plaintiff's case of literal infringement.  Accordingly, the fact there was evidence and argument on literal infringement, that may also bear on equivalence, does not satisfy [the

6

party's burden]." *Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989) (internal citations omitted).

Inventio failed to present legally sufficient evidence for each and every claim limitation for which it is claiming infringement under the doctrine of equivalents.  To the extent Inventio discussed the differences between the accused system and the '094 patent claims at all, it did so only at the most superficial level.  And Inventio did not attempt to explain why the function, way, and result of the elements of the accused product are substantially the same as the elements of the asserted claims on a limitation-by-limitation basis.  The only testimony Inventio offered on the issue—that of Dr. Dowling—fell far short of what the Federal Circuit and Supreme Court require.

Indeed, Dr. Dowling did not identify or explain any differences between the accused installations and the '094 patent claim limitations because he does not believe any exist.  (Trial Tr. 722:1-7 ("A. Yes, it is my opinion that the claims are met literally.  But this is more just—a legal issue that we're looking at but it is not—…. Not a legal issue.  We are looking at it for reasons—my opinion is it is met literally, period.").)

For many of the claim elements, Dr. Dowling did not describe the hypothetical differences at all.  For example, on "information transmitter" he never even explained what other form of communication might be at issue before concluding that the unmentioned alternative gives "the same benefit."  (Trial Tr. 724:14-15.)  For other elements, Dr. Dowling mentioned the differences only in the most general and conclusory fashion and then concluded—with no analysis—that they were insubstantial because they led to some benefit of the patent.

In just one of many examples, Dr. Dowling found equivalents for the second paragraph of claim 1 "[b]ecause the control device in the Otis system still receives information from the

storage device, and processes that as an elevator call, and responds by allocating an elevator, using a predetermined algorithm" even if it "receives something different, like some packet from the storage device that somehow isn't an elevator call." (Trial Tr. 725:4-11.) The only possible difference identified is the "packet" received from the storage device. There is no explanation of how a "packet" or data is insubstantially different from the elevator call required by the claim based on anything in the patent. And there is not even a mention of what parts, if any, of the accused installation would be the equivalent of the "control device" also required in this portion of claim 1, let alone how or why those parts could be considered the equivalent of the '094 patent "control device."

Dr. Dowling's approach to the doctrine of equivalents was exemplified in his discussion of the last section of claim 14 (referred to by Dr. Dowling as 14[f]). Dr. Dowling testified:

> And in the Otis system, the Otis system—to the extent that Otis argues that somehow the ID code or somehow that they are not doing this, that they're doing something very similar. And it would be—**whatever the difference is, it would be insubstantial**. And it would also be met under the doctrine of equivalents.

(Trial Tr. 739:24-740:4 (emphasis added).) Dr. Dowling's approach is "whatever the difference is, it would be insubstantial." Dr. Dowling's approach is without explanation, without support, and without the required particularized testimony or linking argument. The Federal Circuit has recognized that this sort of conclusory testimony is not enough to support a finding of infringement under the doctrine of equivalents. *See Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996).

Because Inventio offered "neither argument nor evidence explicitly setting forth equivalence of result, function, and means, the trial court should not have instructed the jury on the doctrine." *Lear*, 873 F.2d at 1426; *cf. Am. Calcar*, 2011 U.S. App. LEXIS 13083, at *42 ("[G]eneralized testimony as to the overall similarity between the claims and the accused

infringer's product" is insufficient to show equivalence.).  Therefore, Otis is entitled to judgment as a matter of law of noninfringement under the doctrine of equivalents.[1]

Finally, the Court itself was quite "troubled" by the "paucity" of Inventio's proof on this issue and reserved ruling on that aspect of Otis's motion for judgment as a matter of law, noting that "I'm inclined to grant it."  (Trial Tr. 841:9-10; 1327:24-25.)  The Court itself observed that "I must tell you, I didn't hear [Dr. Dowling] say anything other than the most superficial of things" about the doctrine of equivalents.  (Trial Tr. 843:11-13.)  But after the jury's verdict, stating that although "[the issue was] kind of superfluous" and "pretty much a matter of irrelevance since Otis is have found to infringe," the Court denied the motion.  (Trial Tr. 1578:1-7.)  With respect, the issue is by no means superfluous or irrelevant if for no other reason than denial of the motion widens the scope of issues on appeal and forces Otis to fully brief the issue in addition to literal infringement despite Inventio's clear failure of proof on the doctrine of equivalents.

### 2.    Inventio cannot recapture subject matter that was surrendered during the '094 patent prosecution

A patent owner cannot recapture, in the guise of arguing infringement by "equivalents," subject matter that was surrendered during prosecution in order to secure issuance of the patent. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002).  Where an applicant amends and narrows the scope of the claims during prosecution for reasons related to

---

[1] In addition, "when a device that incorporates the purported equivalent is in fact the subject of a separate patent, a finding of equivalency, while perhaps not necessarily legally foreclosed, is at least considerably more difficult to make out."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 493 F.3d 1368, 1379-80 (Fed. Cir. 2007) (footnote omitted); *see also Nat'l Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1192 (Fed. Cir. 1996) ("The fact of separate patentability is relevant, and is entitled to due weight.").  At trial, Inventio offered Otis's evidence of its own patent protection relating to Compass with Seamless Entry.  (*See* DX-433.)

patentability, the amendment gives rise to a presumption that the applicant has surrendered any claim to the narrowed subject matter and cannot claim it infringes by "equivalents." *Id.*

Inventio's claim for infringement by equivalents is barred by prosecution history estoppel as a result of the following narrowing amendments made during prosecution of the '094 patent (additions are shown by underlining, with deleted materials in brackets):

> a recognition device for [the recognition of] recognizing elevator calls entered at [floors, wherein the] an entry location by an information transmitter carried by an elevator user, initializing the entry location as a [of the call is the] starting floor of [the] a journey; [, with the call being fed to]

> a control device receiving the recognized elevator call and [allocated to] allocating an elevator to respond to the elevator call, through [via an] a predetermined allocating algorithm; [and wherein the call is acknowledged and a proposed destination floor communicated to an elevator user via]

> a call acknowledging device comprising one of a display device and an acoustic device to acknowledge recognition of the elevator call and to communicate a proposed destination floor to the elevator user: [, wherein]

> the recognition device, mounted in ~~an~~ the access area in the vicinity of the elevators and spatially located away from elevator doors [the floors], actuating the information transmitter and comprising a unit that [one of] independently reads data transmitted from the information [transmitters] transmitter carried by [an] the elevator user and a storage device coupled between the unit and the control device:

> the recognition device one of transmitting [transmits the] proposed destination floor data, based upon the data transmitted from the information transmitter, to [via a storage device into] the control device, and, transmitting elevator user specific data, based upon [after the recognition of the] individual features of the [lift] elevator user [, transmits the data via an associated] stored in the storage device, (into) to the [lift] control device.

(DX-82 at 74-76, 3/20/97 Amendment at 1-3.)  Applicants made the same changes to the corresponding elements of claim 14, while also amending the last element of that claim to require transmission of data "through the storage device and to the control device."  (*Id.* at 76-77, 3/20/97 Amendment at 3-4.)

10

These amendments substantially narrowed the scope of various claim elements, including notably the "information transmitter," "recognition device," "storage device," and "control device."  As originally written, the claims covered the use of *any* kind of information transmitter; the amended claims cover only certain types of information transmitters that are "actuated" by the recognition device and communicate via electromagnetic waves.  (Dkt. 84 at 3 n.1, 13-14; *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1282 n.1 (Fed. Cir. 2010).)  Further, as amended, the claim requires a specific manner of communication, with the storage device "coupled between" the unit control device and transmission of prescribed types of data. (*See* DX-82 at 74, 3/20/97 Amendment.)  And the narrower, amended claim language prescribes the content of the data communicated from the recognition device to the control device.  The applicants relied on these narrowing amendments to distinguish prior art the examiner relied upon to reject the original claims, and the record includes no other reasons for the amendment. (*See* DX-82 at 67, 12/20/96 First Office Action (rejecting claims).)

Under *Festo,* Inventio must be presumed to have disclaimed any elevator systems that do not have the newly added and narrowed elements.  A patent owner can, in narrow circumstances, rebut the presumption created under the *Festo* decision, for example by showing that the material added by amendment was merely "tangential" to patentability.  *Festo*, 535 U.S. at 740-41.  The patent owner, however, and *not* the accused infringer, bears the burden of rebutting the *Festo* presumption of prosecution history estoppel.  *Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008).  Inventio has not offered any evidence to rebut the *Festo* presumption.  Accordingly, Inventio cannot claim infringement under the doctrine of equivalents for the amended elements of the '094 patent claims.  *Id.*

11

### 3. Inventio's doctrine of equivalents claim would vitiate the asserted claims of the '094 patent

If application of the doctrine would vitiate a claim limitation, "then there can be no infringement under the doctrine of equivalents as a matter of law." *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998). The doctrine of equivalents cannot be invoked where an equivalent claim element is missing altogether, or where the so-called equivalent would vitiate the claim. *See Warner-Jenkinson*, 520 U.S. at 33-34; *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934-35, 939 (Fed. Cir. 1987) (en banc). This limit is often referred to as the all-limitations rule. *See, e.g.*, *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1333 (Fed. Cir. 2001) ("No claimed [limitation], or an equivalent thereof, can be absent if the doctrine of equivalents is invoked.").

Inventio's theory of equivalents would result in vitiation of each of the asserted claims. Here, for example, Dr. Dowling testified that the claim limitation that a card reader be situated "in the vicinity of" the elevators can be satisfied by a card reader that is "located a little bit too far away." (Trial Tr. 727:1-9.) Dr. Dowling's reason is that these card readers still get "the benefit of the card readers being located relatively close." (*Id.*) If this were true, it would improperly render meaningless the "in the vicinity of" claim limitation in the '094 patent. Dr. Dowling's equivalence opinion on "coupled between"—an opinion he changed after the Court's *Markman* ruling—suffers from a similar defect.

### 4. Inventio's doctrine of equivalents claim improperly encompasses the prior art

Finally, "there can be no infringement under the doctrine of equivalents if the asserted scope of equivalency would encompass the prior art." *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1332 (Fed. Cir. 2001). Inventio's doctrine of equivalents argument would extend the '094 patent into the subject matter taught by the prior art.

For all of the reasons above, Otis is entitled to judgment as a matter of law on Inventio's claim of infringement under the doctrine of equivalents.

### C.   Inventio Failed to Offer Legally Sufficient Evidence to Prove That Otis Has Induced the Infringement of the '094 Patent

To prove inducement of infringement, Inventio needed to show that Otis purposefully caused, urged, or encouraged a third party to infringe the claims of a patent. There can be no inducement of infringement if there is no direct infringement of the patent by a third party. *See Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1341 (Fed. Cir. 2008) ("[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe.").

Inducing infringement cannot occur unintentionally. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities."). Inducing infringement cannot occur unless the party accused of inducing infringement had knowledge that the induced acts were patent infringement. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011) ("[W]e now hold that induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement.").

Inventio has failed to meet each of these requirements of proving that Otis induced infringement. First, Inventio has not identified a third party who directly infringes the '094 patent. Second, Inventio did not provide any evidence that Otis knowingly encouraged any third party to infringe the '094 patent. Third, Inventio failed to show that Otis knew that any acts of encouragement would lead to infringement of the '094 patent. Inventio adduced no evidence that Otis encouraged infringement by requiring the use of a certain type of card within the scope

of the '094 patent at any of the accused installations, or a specific means of interfacing Compass with the building's security system.  To the contrary, for example, for five of the accused installations, it is undisputed that Otis did not even know, let alone encourage, which cards and card readers would be used at five of the seven accused installations.  (Trial Tr. 748:7-16.)  So Otis could not have encouraged infringement of the '094 patent for those installations.  More fundamentally, Inventio offered no evidence at *any* of the accused locations of Otis's intent to cause an infringement of the '094 patent.  Therefore, Otis is entitled to judgment as a matter of law on Inventio's claim of induced infringement.

### D.   Inventio Failed to Prove Contributory Infringement by Otis of the '094 Patent

To prove contributory infringement, Inventio needed to show that Otis "offer[ed] to sell or [sold] within the United States" a product "constituting a material part of the invention."  *Aro Mfg. Co. v. Convertible Top Replacement Co*., 377 U.S. 476, 487, 488 n.8 (1964); 35 U.S.C. § 271(c).  Inventio needed to establish that Otis did so "knowing" the product was "especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use…."  *Aro Mfg. Co*., 377 U.S. at 485; *see also Global-Tech Appliances*, 131 S. Ct. at 2068 (citing *Aro*, 377 U.S. at 488 and n.8) (holding that "knowledge of the patent was needed" to prove contributory infringement).  "[N]on-infringing uses are substantial when they are not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental."  *Vita-Mix Corp. v. Basic Holding*, *Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009).

Inventio failed to offer legally sufficient evidence of contributory infringement by Otis.  For example, Inventio failed to show that Otis's Compass with Seamless Entry is unsuitable for substantial noninfringing use.  Inventio's expert agreed that use of Compass with Seamless Entry

14

with a magnetic strip card or a bar code—common card reader technologies—would not infringe the patent.  (Trial Tr. 756:23-757:23.)  This admission alone establishes that Compass with Seamless Entry is capable of substantial noninfringing uses.  Therefore, Otis is entitled to judgment as a matter of law on Inventio's claim of contributory infringement.

## II.    Otis Is Entitled to Judgment as a Matter of Law on Obviousness

### A.    Obviousness Is a Question of Law and the Jury's Verdict Is Advisory Only

"The ultimate judgment of obviousness is a legal determination."  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007) (citing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966)).  As the Federal Circuit has explained:

> We review the jury's conclusions on obviousness, a question of law, without deference, and the underlying findings of fact, whether explicit or implicit within the verdict, for substantial evidence.  While a jury may render a decision on a question of obviousness when it is considering any underlying fact questions, … obviousness is ultimately a question of law that this court reviews *de novo.* When we consider that, even in light of a jury's findings of fact, the references demonstrate an invention to have been obvious, we may reverse its obviousness determination.

*Boston Scientific Scimed, Inc. v. Cordis Corp.*, 554 F.3d 982, 990 (Fed. Cir. 2009) (citations and internal questions marks omitted).  The jury's verdict on Otis's invalidity defense is, therefore, advisory only, and the Federal Circuit will review this Court's determination on the issue *de novo*.

### B.    The '094 Patent Would Have Been Obvious to a Person of Ordinary Skill in the Art at the Time of the Invention

Otis established by clear and convincing evidence that the '094 patent is invalid.  Federal law "forbids issuance of a patent when 'the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'"  *KSR*, 550 U.S. at 406 (quoting 35 U.S.C. § 103(a)).  A patent that claims

15

"[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 416; *see also* United States Patent and Trademark Office Examination Guidelines Update: Developments in the Obviousness Inquiry After *KSR v. Teleflex*, 75 Fed. Reg. 53,643, 53,647 (Sept. 1, 2010) ("A claimed invention is likely to be obvious if it is a combination of known prior art elements that would reasonably have been expected to maintain their respective properties or functions after they have been combined.") (citing *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356 (Fed. Cir. 2008)).

The Supreme Court has set out the steps of the obviousness inquiry:

Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*KSR*, 550 U.S. at 406 (citation and internal quotation marks omitted).

"Obviousness can be proven by combining existing prior art references." *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1364 (Fed. Cir. 2008). "Often, it will be necessary for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue." *KSR*, 550 U.S. at 418.

"When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is

16

likely the product not of innovation but of ordinary skill and common sense.  In that instance the fact that a combination was obvious to try might show that it was obvious under § 103." *Id.* at 421.

Otis must prove obviousness by clear and convincing evidence.  *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2251 (2011).

### 1.      Prior art not before the PTO may "carry more weight"

Despite the presumption of validity, the Supreme Court has recognized "the same commonsense principle" that "new evidence supporting an invalidity defense may 'carry more weight' in an infringement action than evidence previously considered by the PTO."  *Id.* (citing *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984)). "Simply put, if the PTO did not have all material facts before it, its considered judgment may lose significant force … [a]nd … the challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain."  *Id.*

In this case, the "new evidence supporting" invalidity—the Schroeder article upon which Otis primarily based its invalidity defense (DX-62; DX-72) and the prior art on backscatter RFID—undisputedly were not before the PTO and therefore "carr[ies] more weight" than the evidence the PTO did consider.  (*See, e.g.*, Trial Tr. 1291:13-15; 1314:9-12 (Dowling testimony).)

### 2.      The prior art demonstrates that the '094 patent is obvious as a matter of law

Inventio's own expert, Dr. Dowling, concedes that the Schroeder article (DX-62; DX-72) would teach a person of ordinary skill in the art that once a card was inserted, be it a magnetic strip card or a contact card or another card-system method, the card reader would read data and an elevator control system would tell the passenger what elevator to go to.  (Trial Tr. 1291:16-21

(Dowling testimony).)  Dr. Dowling also conceded that backscatter RFID cards were known in the art.  (Trial Tr. 1297:20-1298:5.)  Prior art that taught these technologies include, for example, Cardullo (DX-1130), Tamada (DX-1131), Landt (DX-262), Sasaki (DX-269), Chapman (DX-1125), Komatsu (DX-272), and Yamagishi (DX-276).  But, as Dr. Dowling admitted, there was no prior art on backscatter RFID before the patent office examiner during the prosecution of the '094 patent.  (Trial Tr. 1314:9-12.)

At trial, Dr. Dowling had to retreat from a critical piece of his validity analysis with respect to claim 1 of the '094 patent.  Having initially taken the position that Schroeder and RFID prior art combined would not have taught what he labeled elements [e] and [f] of claim 1, Dr. Dowling "backed off" his opinion with respect to element [f].  (Trial Tr. 1293:10-23; 1302:11-24.)  Dr. Dowling agreed that the Schroeder article disclosed the idea of having proposed floor destination information stored on a card that was read by a card reader.  (Trial Tr. 1295:5-8.)  Based on this admission, Dr. Dowling was forced to acknowledge that Schroeder, when combined with the RFID art, teaches element [f] of claim 1.  (PDem-169; Trial Tr. 1302:11-24.)

Dr. Dowling's testimony leaves only element [e]—"a storage device coupled between the unit and the control device"—in dispute for claim 1.  (*Id.*)  But Dr. Dowling made key admissions on element [e] as well.  First, he acknowledged that databases were well-known in 1994 and that Yamagishi was an example of elevator prior art that disclosed the use of a storage device.  (Trial Tr. 1302:25-1303:21.)  Second, Dowling admitted that Schroeder "does disclose having the storage device right there on the card" and that he had offered the opinion in his expert reports that "having a storage device on a card could … be covered by the asserted claims of the '094 patent."  (Trial Tr. 1304:1-1305:15.)

18

If Dr. Dowling is correct (and he is) that Schroeder teaches the idea of having proposed floor destination information stored on a card that was read by a card reader, then element [e] is also obvious in light of Schroeder because all element [e] teaches is "a storage device coupled between the unit and the control device." In light of these admissions as to elements [e] and [f]—and having conceded that Schroeder in combination with RFID prior art teaches elements [a] through [d]—the testimony of Inventio's own expert demonstrates why claim 1 of the '094 patent would have been obvious to a person of ordinary skill in the art at the time of the invention. And since Dr. Dowling acknowledged that the disputed issues on validity were common among claims (Trial Tr. 1272:5-1273:10, 1284:21-1285:1; PDem-182), these same admissions demonstrate why the other asserted claims of the '094 patent are also obvious as a matter of law.

For his part, Otis's expert, Prof. van der Weide, testified at length about the relationship between the asserted claims and the four primary and four secondary prior art references that he relies upon for his opinions. (*See* Trial Tr. 1032-90.) Specifically, Prof. van der Weide explained that:

- Claim 1 is obvious in light of Schroeder, Landt, and Tamada (Trial Tr. 1049-57; 1088); additionally, claim 1 is obvious in light of Godwin, Landt, and Tamada (Trial Tr. 1069-75; 1088-89);

- Claim 14, which is identical to claim 1 except adds an additional element requiring that the recognition device transmit the data through the storage device and to the control device, is obvious in light of Schroeder, Landt, and Tamada (Trial Tr. 1057-59; 1088); additionally, claim 14 is obvious in light of Godwin, Landt, and Tamada (Trial Tr. 1075-76; 1088-89);

- Claim 2 is obvious in light of Schroeder, Landt, and Tamada (Trial Tr. 1059; 1088); additionally, claim 2 is obvious in light of Godwin, Landt, and Tamada (Trial Tr. 1088-89);

- Claim 7 is obvious in light of Schroeder, Landt, Tamada, and Yoshiji (DX-247) (Trial Tr. 1059; 1089); additionally, claim 7 is obvious in light of Godwin and Yoshiji (Trial Tr. 1076-79; 1089);

19

- Claim 9 is obvious in light of Schroeder, Landt, and Tamada (Trial Tr. 1059-60; 1088); additionally, claim 9 is obvious in light of Godwin, Landt, and Tamada (Trial Tr. 1079; 1088-89);

- Claim 11 is obvious in light of Schroeder, Yamagishi, Landt, and Tamada (Trial Tr. 1060-63; 1088-89); additionally, claim 11 is obvious in light of Godwin and Yamagishi (Trial Tr. 1090);

- Claim 12 is obvious in light of Schroeder, Landt, and Tamada (Trial Tr. 1063; 1088); additionally, claim 12 is obvious in light of Godwin, Landt, and Tamada (Trial Tr. 1088-89); and

- Claim 13 is obvious in light of Schroeder, Landt, and Tamada (Trial Tr. 1063-64; 1088); additionally, claim 13 is obvious in light of Godwin, Landt, and Tamada (Trial Tr. 1079; 1088-89).

Prof. van der Weide addressed the "motivation to combine" references teaching the use of destination dispatch elevator systems with references teaching the use of RFID and other technologies as information transmitters in such systems (*see* Trial Tr. 1083-90), noting that this motivation is provided from "the prior art itself,"[2] as well as the knowledge of a person of ordinary skill in the art about the interchangeability of different means of transmitting information between a transmitting device (card, transmitter) and recognition device (card reader).

In short, the individual elements of the '094 patent claims—basic components of a destination dispatch elevator system and information transmitters used to input elevator calls—were known in the prior art.  As explained by Prof. van der Weide, "there are a finite number of identified, predictable solutions" in terms of cards and card readers that a person of ordinary skill could use in this application.  *KSR*, 550 U.S. at 421.  (*See* Trial Tr. 1063:14-20; 1086:4-11.)  Inventio's own expert admitted he was aware of no other categories of card readers available in

---

[2] For example, Schroeder suggests the use of "card readers" to place elevator calls, Yamagishi teaches such "cards are not limited to magnetic cards, and other types of cards can of course be used," and Komatsu teaches the interchangeability of card readers for "reading data recorded by a magnetic, wireless or contact method."  (*See* Trial Tr. 1043; 1062; 1084-85.)

1994 besides IC cards, backscatter RFID, bar code, proximity cards, magnetic strip, remote control, and capacitive coupling (Trial Tr. 1299:2-8)—a plain concession that there are a finite number of alternatives.

In sum, there is no dispute that the PTO examiner did not have Schroeder or any of the backscatter RFID prior art when the patent was granted, which means this prior art "carr[ies] more weight." *Microsoft Corp.*, 131 S. Ct. at 2251.  There were a finite number of alternative types of card readers in 1994, which means RFID backscatter is obvious to try.  The prior art itself, moreover, provides a teaching or suggestion to combine.  All this renders the '094 patent claims invalid for obviousness under *KSR.*  550 U.S. at 421.

### C. Inventio Offered Insufficient Evidence to Establish any Secondary Indicia of Nonobviousness

The final factor in determining obviousness is examination of any objective evidence of nonobviousness.  *See, e.g.*, *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1320, 1323-24 (Fed. Cir. 2004).  The Federal Circuit has identified "*inter alia*, commercial success, satisfaction of a long-felt need, and copying to be relevant factors in this inquiry."  *Id.* at 1324.

In contrast to Otis's clear and convincing evidence of obviousness, Inventio offered insufficient evidence to "dislodge the determination" that the claims of the '094 patent are obvious.  *KSR*, 550 U.S. at 426.

First, there was insufficient evidence to establish that Otis "copied" the patented invention, which requires replication of a specific product.  (Trial Tr. 1373:17-23.)  Moreover, there was evidence at trial that (1) Otis developed its own product independently (*see, e.g.*, DX-289, PX-5, DX-1055, Trial Tr. 918:22-919:4 (Sansevero testimony)); (2) Otis did not have any knowledge about Schindler ID *with automatic destination* (without which, it is undisputed, Schindler ID does not embody the patented invention) (*see, e.g.*, Trial Tr. 918:22-919:4

21

(Sansevero testimony)); and (3) Otis's product is different from Schindler's and in fact does something Schindler's product cannot do (*see, e.g.*, DX-360, Trial Tr. 490:17-491:2).

Second, despite Inventio's argument to the contrary, there was insufficient evidence to establish that the patent solved a long-felt need. Indeed, there was evidence that Otis patented a system in 1987 that involved an encoded card and associated reader in the context of destination calls. (*See, e.g.*, DX-85 (Nowak patent).)

Third, the evidence at trial established that, far from there being any commercial success tied to the patented invention, the patented invention has *not* been commercially successful. Indeed, even assuming that both Schindler's and Otis's products practice the patent, there are only 25 installations in the United States that use the patented feature.[3] By comparison, there are *thousands* of buildings in the United States that use either Schindler's elevators or Otis's elevators without any form of destination dispatching interface, and *hundreds* of buildings in the United States that use either Schindler's Schindler ID product or Otis's Compass product *without* the allegedly patented feature. These numbers demonstrate both that the patented feature is not commercially successful *and* that any commercial success of Schindler ID or Compass with Seamless Entry is *not* tied to the patented feature. Indeed, the Court itself recognized as much when it ruled with respect to damages that Inventio had "not demonstrated for any installation that the demand was driven in a whole or in substantial part for the entire installation by the infringing product." (Trial Tr. 1607:10-12.) Accordingly, there is no evidence to support "commercial success" as secondary indicia of nonobviousness.

---

[3] In addition to the seven accused Otis installations and seventeen Schindler installations at issue at trial, Otis identified an eighth Otis installation that temporarily used Compass with Seamless Entry. (*See* Dkt. 347.)

Finally, despite Inventio's attempts to demonstrate that there was "praise in the industry" for the patented invention, there was absolutely no evidence that any alleged "praise" for Inventio's product was tied to the patented invention.  *See, e.g.*, *Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1305 (Fed. Cir. 2010) ("Industry praise must [] be linked to the patented invention.") (citing *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1352 (Fed. Cir. 2010)).

Inventio claimed that an "award" from "Buildings.com" was industry praise, but there was no evidence that the staff who gave the award were "in the field," and there was evidence that they merely parroted a Schindler press release.  *See, e.g.*, *Productivity Software Int'l, Inc. v. Healthcare Techs.*, No. 93 Civ. 6949 (RPP), 1995 U.S. Dist. LEXIS 6107, at *15 (S.D.N.Y. May 8, 1995) (rejecting evidence of written praise from customer because "no information is provided regarding the writer's qualifications for comparing Plaintiff's program [the invention] to other computer software").  (*See* Trial Tr. 503:11-19; 510:1-4.)  Inventio also claimed that an "award" from "Facilities.net" was industry praise, but Inventio's own witness admitted that the award was merely based on the number of times *any internet user* (including Schindler's own employees) clicked on product information.  (*See* Trial Tr. 500:19-22; 501:14-21; 502:4-7 (Saloio testimony).)  Finally, Inventio made much of a "Breaking Barriers" award its product received, but Dr. Paul Friedli, the inventor, admitted the award cited a feature that was available on Schindler's destination dispatching products that *do not* practice the patented feature.  (Trial Tr. 255:13-17; 255:25-256:2.)  None of these "awards"—taken together or separately—even remotely establishes "praise in the industry" for the patented invention.  *See Geo. M. Martin Co.*, 618 F.3d at 1305.

23

### D.      The PTO's Recent Actions Provide Further Evidence that the '094 Patent Is Invalid on Obviousness Grounds

As the Court is aware, Inventio's '094 patent is currently under reexamination by the

PTO.  On reexamination, there is no presumption of validity that is accorded during a jury trial.

*See In re Swanson*, 540 F.3d 1368, 1377 (Fed. Cir. 2008) ("In PTO examinations and

reexaminations, the standard of proof—a preponderance of evidence—is substantially lower than

in a civil case; there is no presumption of validity.") (citations omitted).  Thus far, the

reexamination process has gone decisively against Inventio, providing further support for Otis's

invalidity defense based upon obviousness.

On January 21, 2011, the PTO ordered reexamination of the '094 patent.  (Dkt. 333, Ex.

C.)  On April 21, 2011, the PTO issued an initial office action rejecting all of the claims of the

'094 patent as obvious based on previously undisclosed prior art, including the Schroeder article

and the Godwin patent discussed at trial.  (Dkt. 333, Ex. D.)  Inventio filed a response to that

office action on June 9.  (Ex. A.[4])  On September 21, 2011 the PTO issued a second office action

rejecting claims 1-10 and 12-14 as obvious based on previously undisclosed prior art, including

the Schroeder article and the Godwin patent discussed at trial.  (Ex. B.)

Although the PTO reexamination process is not complete, the PTO has twice declared

that, in light of prior art not before the PTO when it issued the patent, at least claims 1-10 and

12-14 are obvious.  These actions provide further support for Otis's argument that the '094

patent is invalid.

---

[4] "Ex. __" refers to Exhibits attached to the October 11, 2011 Declaration of Stephen J. Cowen submitted in support of Otis Elevator's Renewed Motion for Judgment as a Matter of Law.

**III.     In the Alternative, Otis Is Entitled to a New Trial**

For each of the foregoing reasons, the jury's verdict on Inventio's claims was likewise against the great weight of the evidence presented at trial.  Otis therefore requests, in the alternative, a new trial under Fed. R. Civ. P. 59.

**Conclusion**

Pursuant to Fed. R. Civ. P. 50(b), Otis requests that the Court grant it judgment as a matter of law on all of Plaintiff Inventio AG's claims or, in the alternative, a new trial under Rule 59.


October 11, 2011                                          By:    /s/ Andrew C. Baak
                                                                      Andrew C. Baak

James K. Leader (JL 9417)                              Mark L. Levine
S. Alyssa Young (SY 6105)                              Sean W. Gallagher
Michael J. Tiffany (MT 9367)                           Andrew C. Baak
LEADER & BERKON LLP                                    Stephen J. Cowen
630 Third Avenue                                       Katherine G. Minarik
New York, NY  10017                                    BARTLIT BECK HERMAN
Tel: 212-486-2400                                      PALENCHAR & SCOTT LLP
Fax: 212-486-3099                                      54 W. Hubbard Street, Suite 300
                                                       Chicago, IL  60654
                                                       Tel: 312-494-4400
                                                       Fax: 312-494-4440

                                                       *Attorneys for Defendant*
                                                       *Otis Elevator Company*

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew C. Baak, Esq., hereby certify that on October 11, 2011, a true and correct copy of the foregoing **DEFENDANT OTIS ELEVATOR COMPANY'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW** was electronically filed and served on the following parties via email and overnight delivery:

Richard Z. Lehv
Alexander L. Greenberg
Fross Zelnick Lehrman & Zissu, P.C.
866 United Nations Plaza
New York, NY 10017
Tel: (212) 813-5900
Fax: (212) 813-5901

Joseph R. Re
Jon W. Gurka
Joseph S. Cianfrani
Cheryl T. Burgess
Knobbe, Martens, Olson & Bear, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Tel: (949) 760-0404
Fax: (949) 760-9502

*Attorneys for Plaintiff*
*Inventio AG*

By:   /s/ Andrew C. Baak
         Andrew C. Baak