# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| INVENTIO AG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-CV-05377 (CM) |
| | ) | |
| OTIS ELEVATOR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

---

## DEFENDANT OTIS ELEVATOR COMPANY'S
## REPLY BRIEF IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND ITS MOTION FOR A NEW TRIAL AND TO AMEND THE JUDGMENT

**Table of Contents**

Introduction ........................................................................................................................ 1

Argument .......................................................................................................................... 1

I.      Otis Is Entitled to Judgment As a Matter of Law on the Doctrine of Equivalents ............ 1

II.     Otis Is Entitled to Judgment As a Matter of Law on Obviousness ..................................... 4

        A.      Obviousness Is Reviewed *De Novo* .......................................................................... 4

        B.      The Evidence Does Not Support the Findings that Inventio Claims Are
                Implicit in the Jury's Verdict ................................................................................... 5

                1.      The Jury Did Not Find That it "Accepted Dr. Dowling's
                        Testimony and Disbelieved Dr. van der Weide" ......................................... 5

                2.      The Jury Did Not Find That There Was No Motivation to
                        Combine, and There Was Insufficient Evidence to Support Such a
                        Finding ...................................................................................................... 6

                3.      The Jury Did Not Find That the Art Otis Relied Upon Was Not
                        Pertinent, and There Was Insufficient Evidence to Support Such A
                        Finding ...................................................................................................... 6

                4.      The Jury Did Not Find That the Combined Prior Art References
                        Did Not Disclose Each and Every Limitation of the Asserted
                        Claims, and There Was Insufficient Evidence to Support Such a
                        Finding ...................................................................................................... 7

                5.      The Jury Did Not Find That the Prior Art References Otis Relied
                        on Were Cumulative Before the Patent Office, and There Was
                        Insufficient Evidence to Support Such a Finding ....................................... 8

                6.      The Jury Did Not Find that the Claimed Invention Was
                        Commercially Successful and Had Garnered Praise Throughout the
                        Elevator Industry, and There Was Insufficient Evidence to Support
                        Such a Finding ........................................................................................... 8

                7.      The Jury Did Not Find that Otis Wanted But Failed to Develop the
                        Invention, and There Was Insufficient Evidence to Support Such a
                        Finding ...................................................................................................... 9

III.    Inventio's New Arguments Before the PTO Alter the Scope of the Claims ...................... 9

Conclusion ...................................................................................................................... 10

## Table of Authorities

**Cases**

*Boston Scientific Scimed, Inc. v. Cordis Corp.*,
    554 F.3d 982 (Fed. Cir. 2009) ............................................................................. 4, 5, 7

*Comark Commc'ns Inc. v. Harris Corp.*,
    156 F.3d 1182 (Fed. Cir. 1998) ................................................................................ 1, 2

*Lear Siegler, Inc. v. Sealy Mattress Co.*,
    873 F.2d 1422 (Fed. Cir. 1989) .................................................................................... 2

*Richardson-Vicks Inc. v. Upjohn Co.*,
    122 F.3d 1476 (Fed. Cir. 1997) ......................................................................... 4, 5, 6, 7

*Schindler Elevator Corp. v. Otis Elevator Co.*,
    593 F.3d 1278 (Fed. Cir. 2010) ........................................................................... 9, 10

**Introduction**

For the reasons set forth in Otis's opening briefs, the Court should grant Otis's request for judgment as a matter of law on invalidity and non-infringement.  In the alternative, the Court should order a new trial on all issues because (a) the verdict was against the weight of the evidence; (b) the Court erred in its construction of "control device;" and (c) Otis was prejudiced by the jury instructions and several evidentiary rulings.

Otis's reply focuses on three issues: Inventio's failure of proof under the doctrine of equivalents, the invalidity of the '094 patent, and recent developments in the pending reexamination.

**Argument**

**I.     Otis Is Entitled to Judgment As a Matter of Law on the Doctrine of Equivalents**

Inventio's response to Otis's request for judgment as a matter of law on the doctrine of equivalents confirms that the Court's initial instinct at trial—which was to grant the motion—was correct.

First, Inventio misstates what Otis must show in order to prevail on its motion.  Inventio claims that because there was no special jury interrogatory informing the court how each element was met, "the jury verdict must be upheld 'if there is sufficient evidence of equivalents and linking testimony such that a reasonable jury could have found that at least one element was met by equivalents.'"  (Inventio JMOL Opp'n Br., Dkt. 362 at 6 (quoting *Comark Commc'ns Inc. v. Harris Corp.*, 156 F.3d 1182, 1190 (Fed. Cir. 1998)).)  To support this position, Inventio quotes the part of *Comark* that states:  "In the absence of a special jury interrogatory informing the court of how each element was met, there is no way of knowing which elements the jury found were met literally and which the jury found were met by equivalents."  *Comark*, 156 F.3d at 1190.

But Inventio leaves out what *Comark* says after that:

> [T]his leaves a defendant challenging a district court's denial of its motion for JMOL on this basis with two options: 1) demonstrate why there is no substantial evidence from which a jury could find that a particular identified element is met literally, and then demonstrate the deficiency of the evidence on equivalents . . . with respect to that element; or 2) demonstrate why no element of the claim satisfies the [] test.

*Id.* In other words, Otis *can* raise the deficiency of the evidence on, for example, the element of claim 1 requiring communication "via electromagnetic waves" because Otis has also raised the deficiency of the evidence for literal infringement on that element. *See id.* Likewise, if—as is the case here—"no element of the claim satisfies" the test for infringement under the doctrine of equivalents, then Otis should prevail on the issue. *Id.* This highlights why Otis's motion for judgment as a matter of law on equivalents is not, as the Court suggested after the jury's verdict, "superfluous." Even if the Court does not grant Otis's motion on literal infringement, the Court should still grant relief on equivalents, which will narrow the issues on appeal.

In addition to misstating the relevant standard, Inventio's response fails on the facts. Inventio argues that Dr. Dowling explained the "function, way, and result" of the elements of the patent claims (Dkt. 362 at 7-10), but Inventio cites to Dr. Dowling's opinions on *literal* infringement. (*Id.* (citing Trial Tr. 638:2-643:18; 643:22-662:22).) The Federal Circuit has rejected this kind of attempt to "subsume[]" the doctrine of equivalents evidence into a "plaintiff's case of literal infringement." *Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989).

In case there was any doubt that Inventio is seeking to bolster Dr. Dowling's cursory testimony on equivalents with his opinions on literal infringement, Dr. Dowling explained to the jury when his testimony on one subject ended and the other began. (*See* Trial Tr. 720:21-721:2.) In the literal infringement testimony Inventio cites, Dr. Dowling described how Compass with Seamless Entry worked. This is hardly the type of evidence that shows, on a limitation-by-

2

limitation basis, how the accused product is substantially the same as the limitations of the asserted claims.

For example, Inventio cites pages 639-40 of the trial transcript as testimony on the "function, way, and result" of the "information transmitter," but in fact that testimony only provides a description of the interaction between the recognition device and the information transmitter.  The testimony contains no "function, way, result" analysis nor any opinion identifying the differences between the accused device and claim elements and explaining how any differences are insubstantial.  (*See, e.g.,* Trial Tr. 640:3-7 ("When the information transmitter is brought into range with the recognition device and the code goes back, that's when the user is placing the elevator call.").)  Likewise, Inventio tells the Court that pages 640 and 657 of the transcript provide testimony on the "function, way, result" of the control device and the basic operation of the DDS in the accused installations.  (Dkt. 362 at 8.)  But again that testimony is merely a general description with absolutely no linking argument—explicit or implicit—showing how the elements of the accused product are substantially the same (or insubstantially different) as the elements of the asserted claims on those limitations where Inventio alleged equivalents.

In sum, there has been a complete failure of proof by Inventio on the doctrine of equivalents, and Inventio's attempts to backfill the record by relying on Dr. Dowling's literal infringement opinions are unavailing.  Otis respectfully requests that the Court—which itself stated that it "didn't hear [Dr. Dowling] say anything other than the most superficial of things" about the doctrine of equivalents—grant Otis's motion on this issue.  (Trial Tr. 843:11-13.)

II.     **Otis Is Entitled to Judgment As a Matter of Law on Obviousness**

    A.      **Obviousness Is Reviewed *De Novo***

Inventio argues that Otis "misstates" the standard of review on obviousness as part of a design to "get this Court to decide obviousness *de novo*." (Dkt. 362 at 18.) And yet as the cases Inventio itself cites make clear, that is exactly how the Court should decide the issue: "*[O]bviousness is ultimately a question of law that this court reviews de novo*." *Boston Scientific Scimed, Inc. v. Cordis Corp.*, 554 F.3d 982, 990 (Fed. Cir. 2009) (emphasis added).

Otis acknowledged in its opening brief that "underlying findings of fact" are reviewed "for substantial evidence" (Dkt. 356 at 15), but that does not save the '094 patent. Although the Court "assess[es] the record evidence in the light most favorable to the verdict winner," this does "not mean that [the Court] is free to abdicate [its] role as the *ultimate decision maker on the question of obviousness*." *Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997) (emphasis added). The Court is not obligated to convert every argument of Inventio's counsel into a finding "implicit" in the jury's verdict, nor is such an approach consistent with the practice of the Federal Circuit. *Id.* at 1478-84. In the "absence of specific findings by the jury," the "effort by the successful plaintiff to support the jury verdict in its favor is [] *made more difficult*." *Id.* at 1485 (emphasis added).

Inventio distorts the standard of review into an attempt to force the Court into accepting "findings of fact" Inventio insists are "implicit" in the jury's verdict and therefore tie this Court's hands when it makes its ultimate *de novo* determination. The Court should reject this effort because (1) as discussed below, several of Inventio's propositions are by no means "implicit factual findings," (2) there was insufficient evidence at trial to support these "facts" regardless of what the jury found, and (3) as Otis explained in its opening brief, "even in light of a jury's

4

findings of fact, [when] the references demonstrate an invention to have been obvious, [the Court] may reverse its obviousness determination."  *Boston Scientific*, 554 F.3d at 990.

**B.     The Evidence Does Not Support the Findings that Inventio Claims Are Implicit in the Jury's Verdict**

Although Inventio suggests otherwise, Otis disputes the sufficiency of the evidence supporting the jury's so-called implicit findings.  Inventio's "findings"—to the extent they are factual determinations implicit in the verdict at all—are *not* supported by substantial evidence.

**1.     The Jury Did Not Find That it "Accepted Dr. Dowling's Testimony and Disbelieved Dr. van der Weide"**

Inventio's statement "the jury accepted Dr. Dowling's testimony and disbelieved Dr. van der Weide's testimony" is not a "finding of fact."  (Dkt. 362 at 19.)  The Court need not defer to Inventio's conclusion about what the verdict means because, without explicit factual findings, the Court itself must "re-creat[e] the facts as they may have been found by the jury." *Richardson-Vicks*, 122 F.3d at 1479.  And in this case, Dr. Dowling's testimony itself establishes that the '094 patent is invalid.

As Otis explained in its opening brief, Dr. Dowling's testimony established that Schroeder plus the RFID prior art or even Schroeder alone would render the claimed invention obvious to a person of ordinary skill in the art.  Dr. Dowling acknowledged that Schroeder combined with the RFID prior art teaches element [f] of claim 1.  (Trial Tr. 1302:11-24.)  And Dr. Dowling was forced to admit that Schroeder "does disclose having the storage device right there *on a card*," which means it disclosed both 1[e] and claim 14[f].  (Trial Tr. 1304:1-1305:15.)  Dr. Dowling also recognized that the disputed issues on validity were common among claims dependent upon claim 1.  (Trial Tr. 1284:17-1285:1.)  These admissions, as explained in Otis's opening brief, demonstrate that the asserted claims were obvious as a matter of law.

In short, although there is no "factual finding" implicit in the verdict that the jury believed Dr. Dowling more than Dr. van der Weide, the issue is irrelevant to the Court's *de novo* obviousness inquiry, particularly because Dr. Dowling's own testimony establishes obviousness.

**2.      The Jury Did Not Find That There Was No Motivation to Combine, and There Was Insufficient Evidence to Support Such a Finding**

The jury's advisory determination on obviousness does not mean the jury found that there was no motivation to combine, and Inventio does not explain why this "finding" is implicit in the verdict.  In light of the absence of any special interrogatory, the Court itself must "assess" the record, and here the record does not support any finding that the prior art did not provide a motivation to combine.  *See Richardson-Vicks*, 122 F.3d at 1479.

To the contrary, as Otis explained in its opening brief, the evidence shows that the prior art itself provided a motivation to combine.  For example, Schroeder suggests the use of "card readers" to place elevator calls, Yamagishi teaches such cards are not limited to magnetic cards, and other types of cards can of course be used, and Komatsu teaches the interchangeability of card readers for "reading data recorded by a magnetic, wireless or contact method."  (*See* Trial Tr. 1043; 1062; 1084-85.)

Finally, as explained earlier, Otis has consistently argued that Schroeder and ordinary skill in the art alone render the patent invalid, such that "motivation to combine" is unnecessary to support a finding of obviousness.  (*See, e.g.,* Dkt. 356 at 20.)

**3.      The Jury Did Not Find That the Art Otis Relied Upon Was Not Pertinent, and There Was Insufficient Evidence to Support Such A Finding**

Inventio provides no argument to support its assertion that the jury necessarily found the prior art Otis relied upon not pertinent.  (Dkt. 362 at 19.)  Inventio also ignores that it stipulated—and the Court accordingly instructed the jury—that Schroeder, the Godwin article,

6

Begle, Nowak, Landt, Tamada, the Godwin patent application, Sasaki, Yamagishi, Komatsu, and Yoshiji, as well as the Miconic 10 system, were all prior art.  (Trial Tr. 1377:7-18.)  Inventio has therefore waived any argument that such prior art were not pertinent.

Even assuming Inventio could show the jury found that certain RFID prior art relied upon were not pertinent, no reasonable jury could have found that Schroeder was not pertinent—and indeed, not even Dr. Dowling took that position at trial.  (*See, e.g.,* PDem-158; Trial Tr. 1257:13-19.)  And Inventio again ignores that this Court may, "even in light of a jury's findings of fact," reverse the jury's obviousness determination when, as here, the references before it "demonstrate an invention to have been obvious."  *Boston Scientific*, 554 F.3d at 990.

### 4. The Jury Did Not Find That the Combined Prior Art References Did Not Disclose Each and Every Limitation of the Asserted Claims, and There Was Insufficient Evidence to Support Such a Finding

The jury might have simply concluded the claims would not have been obvious to a person ordinarily skilled in the art—something the Court is the "ultimate decision maker on." *Richardson-Vicks*, 122 F.3d at 1479.

Otis's opening brief explained in detail how the evidence at trial established that the prior art references—including Schroeder alone or in combination with the RFID art—disclosed each and every limitation of the asserted claims.  Dr. Dowling's own testimony established this, given that he (1) conceded that Schroeder in combination with RFID prior art teaches elements [a] through [d] and [f] of claim 1 (Trial Tr. 1302:21-24), (2) admitted that Schroeder teaches the idea of having proposed destination floor information stored on a card that was read by a card reader (Trial Tr. 1304:1-1305:15), meaning that it discloses claim limitations 1[e] and 14[f], (3) and acknowledged that Schroeder, when combined with the RFID art, teaches element [f] of claim 1 (Trial Tr. 1302:11-24).  In light of Dr. Dowling's testimony alone, the evidence supports only one conclusion:  the prior art references disclose every limitation of the asserted claims.

7

     **5.**     **The Jury Did Not Find That the Prior Art References Otis Relied on Were Cumulative Before the Patent Office, and There Was Insufficient Evidence to Support Such a Finding**

Inventio's argument on cumulative prior art ignores its own expert's admissions that, with respect to the RFID prior art, there was "no prior art on backscatter RFID that was before the patent office examiner during prosecution of the '094 patent."  (Trial Tr. 1314:9-12.)  No reasonable jury could find prior art on RFID cumulative when, in fact, there was no prior art whatsoever on that topic before the PTO.  Likewise, there was insufficient evidence to support any finding that Schroeder was cumulative, especially because Dr. Dowling never explained his assertion that it was—other than to say there was prior art with card readers before the PTO. (Trial Tr. 1319:25-1319:22.)

     **6.**     **The Jury Did Not Find that the Claimed Invention Was Commercially Successful and Had Garnered Praise Throughout the Elevator Industry, and There Was Insufficient Evidence to Support Such a Finding**

As Otis made clear in its opening brief, there was insufficient evidence to establish that the claimed invention was commercially successful or had received "praise in the industry."  Not surprisingly, rather than point the Court to any evidence tying the *patented invention* to "industry praise," Inventio points the Court to praise for its Schindler ID product, which of course is not the patented invention.  (*See* Dkt. 362 at 23.)  Likewise, for evidence of "commercial success" Inventio points only to testimony that Schindler ID was successful.  (*Id.* (citing Trial Tr. 228:18-25).)  Even if Schindler ID can be considered a success, Inventio has not shown a nexus between that success and the patented feature.  And Inventio simply ignores the substantial evidence showing the patented invention was at best a niche product with little impact on the industry.

> **7.** **The Jury Did Not Find that Otis Wanted But Failed to Develop the Invention, and There Was Insufficient Evidence to Support Such a Finding**

It is difficult to see how it is implicit in the jury's verdict that Otis "tried but failed to develop the invention." (Dkt. 362 at 20.) Inventio does not bother explaining how that is so, but in any event, as Otis explained in its opening brief, there was significant evidence that Otis independently developed its own product. As DX-85, the Nowak patent, demonstrated, Otis had developed a system during the late 1980s that used a card reader system with destination calls.

Inventio asserts that there was "evidence" that Otis "wanted to develop the invention" but "failed." (Dkt. 362 at 24 (citing PX-493 and Trial Tr. 1145:5-1154:8).) But Inventio points to no evidence that Otis "wanted" the patented invention, tried to develop it, and "failed." This feeble attempt to manufacture "failure of others" as a secondary indicia of nonobviousness does nothing to change the fact that there was no evidence of such a failure at trial.

## III. Inventio's New Arguments Before the PTO Alter the Scope of the Claims

Contrary to Inventio's protests, Inventio *has* substantively changed the scope of claim 1—and all claims dependent upon it, including claim 11—in its new arguments to the PTO. Before its June 2011 response to the PTO's first office action in the reexamination proceedings, Inventio cannot and does not point to a single instance where it argued to this Court or to the PTO that the "based upon individual features of the elevator user" language found at col. 6, lines 34-36 of the '094 patent is not part of the *alternative* language of the recognition device limitation. To the contrary, as Otis explained in its opening brief, the Federal Circuit itself already explained that in an "alternative[]," "second embodiment, the recognition device recognizes the user by his 'individual features,' such as facial contours, fingerprints, iris, or voice." *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1278, 1284 (Fed. Cir. 2010). Based on Inventio's explicit concession on the issue, the Federal Circuit explained that the

individual features embodiment "simply was never claimed in the application that led to this particular patent."  *Id.* at 1284 n.2.

Inventio does not attempt to reckon with its own concession or the Federal Circuit's understanding of the "individual features" embodiment as a separate, alternative embodiment that was either unclaimed or abandoned and, at a minimum, not covered by the claims of this patent.  Instead, Inventio accuses Otis of "fabricat[ing]" its position.  (Dkt. 361 at 17.)  But Inventio's statement to the PTO speaks for itself: with respect to the "recognition device one of transmitting . . . and, transmitting . . ." language recited in claim 1 at col 6:34-36, "it is clear that the alternative language relates to the 'transmitting' language *but not 'individual features of the elevator user* stored in the storage device.'"  (Dkt. 358, Ex. A at 11 (emphasis added).)  That Inventio does not even attempt to point the Court to a previous occasion on which Inventio has made this argument—and instead resorts to attacking Otis as "disingenuous"—is telling.

Inventio makes much of the fact that dependent claim 11 has, unlike the rest of the patent, been allowed in the most recent office action in the reexamination proceeding.  (Dkt. 361 at 22-23.)  The reexamination is in process, and a final office action from the Patent Office should occur in a matter of months—which may have a substantial impact on the scope of available injunctive relief.  Similarly, Inventio claims that "Otis has no argument whatsoever with regard to Claim 14," but the PTO has so far rejected claim 14 as invalid in the reexamination (Dkt. 361 at 23; Dkt. 358, Ex. B. at 3, 11-15), as Otis pointed out in its opening brief.  (Dkt. 359 at 16.)

## Conclusion

For the foregoing reasons and those stated in Otis's opening Memoranda in Support, Otis respectfully requests that the Court grant its Motion for Judgment as a Matter of Law and its Motion for a New Trial and to Amend the Judgment.

November 8, 2011                                    By:   /s/ Andrew C. Baak
                                                          Andrew C. Baak

James K. Leader (JL 9417)                                 Mark L. Levine
S. Alyssa Young (SY 6105)                                 Sean W. Gallagher
Michael J. Tiffany (MT 9367)                              Andrew C. Baak
LEADER & BERKON LLP                                       Stephen J. Cowen
630 Third Avenue                                          Katherine G. Minarik
New York, NY  10017                                       BARTLIT BECK HERMAN
Tel: 212-486-2400                                         PALENCHAR & SCOTT LLP
Fax: 212-486-3099                                         54 W. Hubbard Street, Suite 300
                                                          Chicago, IL  60654
                                                          Tel: 312-494-4400
                                                          Fax: 312-494-4440

                                                          *Attorneys for Defendant*
                                                          *Otis Elevator Company*

11

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew C. Baak, Esq., hereby certify that on November 8, 2011, a true and correct copy of the foregoing **DEFENDANT OTIS ELEVATOR COMPANY'S REPLY BRIEF IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND ITS MOTION FOR A NEW TRIAL AND TO AMEND THE JUDGMENT** was electronically filed and served on the following parties via email and overnight delivery:

Richard Z. Lehv
Alexander L. Greenberg
Fross Zelnick Lehrman & Zissu, P.C.
866 United Nations Plaza
New York, NY  10017
Tel: 212-813-5900
Fax: 212-813-5901

Joseph R. Re
Jon W. Gurka
Joseph S. Cianfrani
Cheryl T. Burgess
Knobbe, Martens, Olson & Bear, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Tel: 949-760-0404
Fax: 949-760-9502

*Attorneys for Plaintiff*
*Inventio AG*

By:    /s/ Andrew C. Baak
       Andrew C. Baak